ZIMMERMAN v MERRILL LYNCH, PIERCE, FENNER & SMITH,
INC

Docket No. 79378. Submitted May 14, 1985, at Detroit. Decided
February 14, 1986.

Helen V. Zimmerman became the sole owner of a securities
account with Merrill Lynch, Pierce, Fenner & Smith, Inc.,
when her husband died. The account was a "cash account,"
upon which no action could be taken without Mrs. Zimmer-
man's order. She also would be sent a confirmation slip when-
ever a purchase or sale took place and received monthly
statements summarizing the activity on the account. Mrs.
Zimmerman, not being familiar with securities transactions,
entrusted the confirmation slips and monthly statements to her
son to review. A few months later, at Mrs. Zimmerman's
request, the account was changed to a joint account with Mrs.
Zimmerman and her son, Terrence Zimmerman, being named
as co-owners. Shortly thereafter, Terrence Zimmerman had the
"cash account" converted to a "margin account" so that he
could borrow money from Merrill Lynch with the securities as
collateral. Over the next four years, Terrence depleted the
account, originally in excess of $250,000, until it was closed.
Mrs. Zimmerman, upon learning of the status of the closed
account, filed suit against Merrill Lynch, Pierce, Fenner &
Smith, Inc., in Wayne Circuit Court seeking damages for
breach of contract and breach of fiduciary duties, claiming that
she had an express and implied oral agreement with her agent,
Mark Cundiff, that the account would be managed for her
benefit and in her best interests. The court, Maureen Pulte
Reilly, J., granted summary judgment in favor of defendant

REFERENCES

Am Jur 2d, Cotenancy and Joint Obligations §§ 6, 9, 10, 17, 109.

Liability of bank to joint depositor of savings account for amounts
withdrawn by other joint depositor without presentation of pass-
book. 35 ALR4th 1094.

Revocation of tentative trust by pledging or otherwise employing
account as collateral or security. 10 ALR4th 1229.

Conflict of laws as to disposition of and relative rights to bank
deposits in the names of more than one person. 25 ALR2d 1240.

and denied plaintiff's motion to amend her complaint to add a count of fraudulent concealment. Plaintiff appealed. *Held:*

1. The trial court properly dismissed plaintiff's claim for breach of express or implied agreements. The document signed by plaintiff making her son a joint owner was a clear, unambiguous and express agreement subjecting the account to directive by either owner, Merrill Lynch's fiduciary duty to provide growth was limited by that document, and there was no enforceable oral agreement between plaintiff and Merrill Lynch which survived the express agreement.

2. The trial court did not err in denying plaintiff's motion to amend her complaint to add a count of fraudulent concealment. Plaintiff failed to specifically set forth the facts upon which she relied in asserting the fraudulent concealment claim.

Affirmed.

1. BROKERS — SECURITIES — FIDUCIARY DUTIES.

A fiduciary relationship exists between a securities broker and the owners of its accounts; the broker has a duty to act in good faith and with integrity in all matters concerning its accounts and to use reasonable care and effort in providing to its account owners information relevant and material to the scope of the brokerage relationship.

2. BROKERS — SECURITIES — JOINT ACCOUNTS.

Securities brokers generally are not required to individually apprise co-owners of a joint account as to the independent transactions of other owners or to disregard orders from one owner of a joint account where there is a perceived conflict of interest with another owner.

3. BROKERS — SECURITIES — BROKERAGE ACCOUNTS — NOTICE.

A securities broker's mailing of confirmation slips and monthly statements to one owner's residence satisfies the broker's obligation to keep that owner and any co-owners of the account reasonably informed of account activity.

4. FRAUD — FRAUDULENT CONCEALMENT — PLEADINGS.

The pleading of facts to support a finding that a defendant had a duty to disclose certain information is necessary to properly plead an action for fraudulent concealment.

*Moss, Sarvis, Gullen & Herrmann* (by *Christopher R. Gullen),* for plaintiff.

*Butzel, Keidan, Simon, Myers & Graham,* (by

*Douglas S. Graham* and *John A. Hamburger*), for defendant.

Before: M. J. KELLY, P.J., and MACKENZIE and N. J. KAUFMAN,* JJ.

PER CURIAM. Plaintiff appeals as of right from an order of summary judgment under GCR 1963, 117.2(3) and from an order denying her the opportunity to amend her complaint to add a count of fraudulent concealment. We affirm.

Sometime prior to June, 1971, plaintiff's husband, Harold Zimmerman, established a securities account with Merrill Lynch, Pierce, Fenner & Smith, Inc., through their agent Mark Cundiff. Harold Zimmerman eventually made plaintiff a joint owner of the account with rights of survivorship and when he died as the result of an automobile accident in June, 1971, plaintiff became sole owner.

Immediately after her husband's death, plaintiff and her children met with Mr. Cundiff to discuss the account. Mr. Cundiff told her that the account was for her benefit and lifetime care. The account was a "cash account"; Mr. Cundiff could make recommendations but could not act without her order. Whenever a purchase or sale of securities took place, Merrill Lynch mailed a confirmation slip to plaintiff. Plaintiff also received monthly statements summarizing the activity on the account. Plaintiff, however, being unfamiliar with the documents "in the business sense," did not read the documents closely, but, rather, gave them to her son, Terrence Zimmerman, to review.

In 1972, plaintiff had several discussions with her son about changing the account to a joint

* Retired Court of Appeals Judge, sitting on the Court of Appeals by assignment.

account. Terrence informed plaintiff that a joint account would be beneficial to her children in the event of her death. On March 6, 1972, plaintiff wrote a letter to Mr. Cundiff directing him to make her and her son joint owners with rights of survivorship. Plaintiff additionally requested that no transaction be made without the knowledge and consent of both owners. On March 13, 1972, Mr. Cundiff responded that he could not set up the account as requested because owners of a joint account can independently authorize transactions. On March 16, 1972, plaintiff sent a letter directing Mr. Cundiff to make the account joint with Terrence and cancelled the request that the parties exercise joint control.

On May 7, 1972, plaintiff and her son signed a document authorizing Merrill Lynch to act upon orders and instructions from either of them. Plaintiff continued to receive confirmation slips and monthly statements which she gave to her son. Checks issued by defendant in both names were deposited by Terrence Zimmerman into their joint bank account, but apparently without the necessity for both signature endorsements. We note that plaintiff's complaint initially included allegations against Chemical Bank & Trust Co, which was subsequently dismissed by order of August 4, 1984, in accordance with a stipulation stating "that an amicable adjustment of the differences between said parties has been reached."

Soon after being made joint owner, Terrence met with Mr. Cundiff and converted the account to a "margin" account so that he could borrow money from Merrill Lynch with the securities as collateral. Mr. Cundiff testified that he "knew that that particular account had no business being margined" and contacted plaintiff early one morning to inform her of her son's plans and to assure

himself that she understood the full implications of the decision. He further testified that plaintiff had responded by telling him that she approved her son's actions because she wanted to help him get started in his business. Plaintiff, however, testified by deposition that she had never been contacted by Mr. Cundiff other than during the period immediately following her husband's death. She testified that she had never received the telephone call described by Mr. Cundiff nor any other form of communication apprising her of her son's plans. Mr. Cundiff admitted that there was nothing in the records of Merrill Lynch to indicate the date of this conversation nor do we find any other evidence in the record on this matter.

In any event, over the next four years, Terrence depleted the account in excess of $250,000, until it was closed in March, 1976. Plaintiff claims she was finally informed of the status of the account by her son, whereupon she contacted Mr. Cundiff, who confirmed the fact that the account had been closed.

Plaintiff testified by deposition that she had trusted her son implicitly because he had a bachelor's degree in business administration and was familiar with business matters.

On September 25, 1978, plaintiff filed this action in circuit court against Merrill Lynch seeking damages for breach of contract and breach of fiduciary duties. Plaintiff claimed that she had an express and implied oral agreement with Cundiff that the account would be managed for her benefit and in her best interests. She argued that the oral agreement was not superseded by the 1972 written agreement authorizing either plaintiff or her son to direct activity on the account. Plaintiff alleged that, by allowing her son to deplete the account, Merrill Lynch had breached an express or implied

contract to maintain the account for her benefit and had breached its fiduciary duties to her.

In deciding defendant's motion for summary judgment under GCR 1963, 117.2(3), the trial court held that (1) the document signed by plaintiff making her son a joint owner was a clear, unambiguous and express agreement subjecting the account to directive by either owner, (2) Merrill Lynch's fiduciary duty to provide growth was limited thereby, and (3) there was no enforceable oral agreement between plaintiff and Merrill Lynch which survived the express agreement.

On plaintiff's motion for rehearing, the trial court denied her request to amend the complaint to add a count of fraudulent concealment. Plaintiff's motion was denied on grounds of undue delay and insufficient facts to support the claim.

We find that the trial court properly dismissed plaintiff's claim for breach of express or implied agreements. There is nothing in this record to establish that Mr. Cundiff promised to manage or direct the account so that it would provide for plaintiff's lifetime care, though it is true that Mr. Cundiff understood plaintiff's interest and purpose in maintaining the account. The joint account agreement signed by plaintiff and her son authorizes only the owners to direct activity on the account. Clearly, plaintiff had contracted for a jointly owned nondiscretionary account rather than a discretionary account which vests the broker with the authority to buy and sell without the customer's prior approval of each transaction. See *Leib v Merrill Lynch, Pierce, Fenner & Smith, Inc,* 461 F Supp 951, 952-954 (ED Mich, 1978). Even wholly accepting plaintiff's version of her discussion with Mr. Cundiff immediately following her husband's death, Mr. Cundiff's understanding of the purpose of the account and his recommenda-

tions cannot be construed as a legally enforceable contract or agreement negating the clear and unambiguous terms of the written agreement. *Longley v Blue Cross & Blue Shield of Michigan,* 136 Mich App 336, 338-339; 356 NW2d 20 (1984). We find that the trial court properly granted summary judgment under GCR 1963, 117.2(3) with regard to plaintiff's breach of contract claim.

We also find that the trial court properly dismissed plaintiff's claim for breach of fiduciary duty. The parties do not dispute that the relationship between plaintiff and defendant in this case was a fiduciary one. Additionally, a fiduciary relationship existed between defendant and Terrence Zimmerman as joint owner of the account. Thus, defendant owed both plaintiff and Terrence a duty to act in good faith and with integrity in all matters concerning the account and to use reasonable care and effort in providing information relevant and material to the scope of the brokerage relationship. *Preston v MacCrone & Co,* 212 Mich 118, 130; 180 NW 448 (1920); *Thropp v Bache Halsey Stuart Shields, Inc,* 650 F2d 817, 819-820 (CA 6, 1981); *Walston & Company, Inc v Miller,* 100 Ariz 48, 51; 410 P2d 658, 660-661 (1966), citing 2 Restatement Agency, 2d, § 381, p 182. See also 12 Am Jur 2d, Brokers, § 84, p 837. Here, plaintiff's claim was that defendant had the affirmative duty to specially notify her of the status of the account once it became apparent that Terrence Zimmerman was depleting the account contrary to plaintiff's purpose and interest. We disagree.

Brokers generally are not required to individually apprise co-owners of a joint account as to the independent transactions of other owners. Nor are brokers required to disregard orders from one owner of a joint account where there is a perceived conflict of interest with another owner. In this

case, for example, Terrence Zimmerman's authority to order transactions on the account was equal to plaintiff's and defendant thus owed Terrence "the duty to carry out the customer's orders promptly," *Leib, supra,* p 953, in spite of a possible conflict of interest. Moreover, a broker's mailing of confirmation slips and monthly statements to one owner's residence satisfies the broker's obligation to keep both customers reasonably informed of account activity. In the instant case, defendant mailed plaintiff confirmation slips for every transaction and a monthly statement summarizing activity on the account. Any duty imposed upon defendant to inform plaintiff was fulfilled by those mailings. Plaintiff chose not to read the slips and monthly statements. She knew that her son had authority to act on the account. Her misplaced reliance on her son cannot be a means of imposing a stricter duty on defendant. Accordingly, we believe that the trial court properly dismissed plaintiff's claim.

Mrs. Zimmerman's experience was an unfortunate one. But it was she who agreed to drop the requirement in the joint account that both she and her son approve all transactions, and it was she who subsequently chose to ignore documentation of account activity which defendant provided her. Had the broker acted as plaintiff asserts he was obliged to do, he would have jeopardized his fiduciary duties to Terrence Zimmerman. MCL 440.4406; MSA 19.4406 imposes a duty on bank customers to examine their bank statements promptly. The customer is precluded from asserting that the bank honored an unauthorized signature or altered check if the customer failed to notify the bank promptly after reviewing his bank statement. We believe that an analogy to that statute is appropriate here. Defendant's duty was

to inform plaintiff of the account's activity. Once that information was conveyed, the onus was on plaintiff to detect transactions harmful to her interests.

Plaintiff also argues on appeal that the trial court should have granted her motion to amend her complaint to add a count of fraudulent concealment. In support of her motion, plaintiff alleged that defendant intentionally concealed from her the fact that Terrence Zimmerman, alone, was negotiating checks issued by defendant to both Helen and Terrence Zimmerman. Plaintiff, however, failed to specifically set forth the facts upon which she relied in asserting this claim. Our review of the record reveals that Terrence was merely depositing into a joint bank account checks which were endorsed with only his signature. Since claims of fraud must be specifically pled, *Zaschak v Traverse Corp,* 123 Mich App 126, 129; 333 NW2d 191 (1983), the trial court did not err in denying plaintiff's motion to amend her complaint for failure to specifically plead a claim of fraudulent concealment.

Affirmed.