**SHELDON COMPANY PROFIT SHARING PLAN AND TRUST, et al., Plaintiffs,**

v.

**Michael K. SMITH, et al., Defendants.**

**No. 1:92–CV–189.**

United States District Court, W.D. Michigan, Southern Division.

April 21, 1994.

Peter W. Steketee, Peter N. Rigas, Grand Rapids, MI, for plaintiffs.

Grant J. Gruel, Gruel, Mills, Nims & Pylman, William C. Reens, Borre, Peterson, Fowler & Reens, PC, Grand Rapids, MI, Gary M. Saretsky, Hertz, Schram & Saretsky, PC, Bloomfield Hills, MI, Boyd A. Henderson, Gordon J. Quist, James R. Peterson, Miller, Johnson, Snell & Cummiskey, D. Scott Stuart, Farr & Oosterhouse, Thomas M. Weibel, Smith, Haughey, Rice & Roegge, PC, Grand Rapids, MI, Bradley J. Schram, Gary M. Saretsky, Dana Donohue, Hertz, Schram & Saretsky, PC, Bloomfield Hills, MI, for defendants.

## OPINION RE PENDING MOTIONS

HILLMAN, Senior District Judge.

### I. INTRODUCTION

Presently before the court is a motion by defendants Oppenheimer & Altman to enjoin, dismiss or stay arbitration claims presently pending before a National Association of Securities Dealers, Inc. ("NASD") arbitration panel ("arbitrators").

Plaintiffs had previously sued in this court Oppenheimer & Altman, along with others, seeking damages for embezzlement and federal securities fraud. Since Oppenheimer & Altman, along with plaintiffs, were subject to an arbitration agreement, I dismissed the state common law and statutory claims against Oppenheimer & Altman and referred them to the NASD panel. Meanwhile, the federal securities claims against the remaining defendants were tried in this court and ultimately resolved.

Oppenheimer & Altman now claim in their motion to enjoin the arbitration that in light of my July 2, 1993, opinion in this case, resolving plaintiffs' federal claims against Oppenheimer and Altman, the issues now pending before the arbitration panel are barred under the doctrines of collateral estoppel and res judicata. *See, Sheldon Co. Profit Sharing Plan & Trust, et al. v. Michael K. Smith, et al.,* 828 F.Supp. 1262 (W.D.Mich.1993) ("*Sheldon*").

Also before the court are plaintiffs' cross motions 1) to compel Michael Smith to attend NASD arbitration, and 2) to order Oppenheimer, Altman and their attorneys to refrain from interfering with plaintiffs' witnesses. Finally, defendants Dolinka, Smith & VanNoord (individuals and partnership), already dismissed from this case, have requested that if the arbitration claims against Oppenheimer and Altman are dismissed or enjoined, the court's order be effected in such a way as not to prejudice Dolinka, Smith and VanNoord's

anticipated claim for contribution against Oppenheimer.

## II.

### OPPENHEIMER AND ALTMAN'S MOTION TO ENJOIN, DISMISS OR STAY ARBITRATION

Oppenheimer and Altman assert that under the res judicata and/or collateral estoppel doctrines, plaintiffs' state law claims currently pending at the NASD arbitration are barred conclusively by the findings in this court's July 2, 1993, opinion. In response, plaintiffs allege that res judicata does not bar their state claims, because none of the state claims now pending were litigated, nor could they have been litigated, in the federal court case. They further claim that collateral estoppel does not apply because the issues decided by this court under federal law are not precisely the same issues that arise in the state law claims now being made.

### A. *Jurisdiction and Elements of Injunctive Relief*

▆ I no longer have jurisdiction over the state law claims presently before the arbitrators in this case, because they were dismissed from this court in October 1992 pursuant to an arbitration agreement between the parties, as explained above. Under the All–Writs Act, 28 U.S.C. § 1651, however, a federal court has broad injunctive powers to protect its own judgments, including the power to enjoin arbitration in the interests of preventing relitigation of claims and issues it has already decided. *Kelly v. Merrill Lynch, Pierce, Fenner & Smith*, 985 F.2d 1067, 1069 (11th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993). Having issued an injunction, the court additionally has authority to reach and decide a res judicata question where relitigation would threaten its judgment. *Id.*

For the reasons that follow, arbitration of all but one of plaintiffs' state law claims is enjoined.

### B. *Res Judicata*

▆ Defendants' first claim is that plaintiffs' arbitration claims are barred by res judicata. They maintain that res judicata bars plaintiffs from pursuing before the NASD panel their state law claims of churning. The parties concede that no explicit statutory prohibition on "churning" exists in either federal or state law. It is claimed by defendants that because plaintiffs' federal churning claim, which alleged a violation of section 10(b) of the Securities Exchange Act of 1934 and Securities Exchange Commission Rule 10(b)(5), promulgated thereunder, was dismissed on summary judgment, no further churning claims may be brought.

▆ For a claim to be barred by res judicata, it must be preceded by another action in which (1) the parties were the same, (2) a judgment was rendered on the merits, and (3) the claim at issue was brought or could have been brought. *White v. Colgan*, 781 F.2d 1214, 1216 (6th Cir.1986).

The first two requirements for res judicata are met in this case. The parties to the federal claims on which defendants' res judicata defense is based were plaintiffs and defendants Oppenheimer and Altman. In addition, my decision of those claims on summary judgment was a final decision on the merits for res judicata purposes. *Mayer v. Distel Tool and Machine Co.*, 556 F.2d 798 (6th Cir.1977).

▆ Whether or not plaintiffs' churning claims are barred depends on whether they were or could have been litigated in the previous federal court action. As stated above, the parties had agreed to arbitrate any state law claims, and in October, 1992, the court granted Oppenheimer and Altman's motion to compel arbitration with respect to all state law claims. Therefore, the claims were not brought in the federal action. District judges are obliged under the federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, "to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). For these reasons, plaintiffs' churning claims now pending before the NASD

arbitration panel were neither litigated nor could they have been litigated in the previous federal court action. As the third requirement of res judicata has not been met, the defense does not apply in this case.

### C. *Issue Preclusion*

■ Defendants' second defense is that plaintiffs' arbitration claims are barred by collateral estoppel, or issue preclusion. Collateral estoppel bars relitigation of an issue of fact or law that has already been actually litigated and necessarily decided in a previous action between the same parties where a final judgment on the merits was reached. *Guzowski v. Hartman*, 849 F.2d 252, 255 n. 4 (6th Cir.1988), *citing, Duncan v. Peck,* 752 F.2d 1135, 1138 (6th Cir.1985); Restatement (Second) of Judgments, § 27 (1982).

In this case, defendants Oppenheimer and Altman assert that the doctrine of collateral estoppel prevents plaintiffs from litigating any of their state law claims before the arbitration panel. Defendants claim that the issues included in proving the state law claims are the same as those already litigated and necessarily decided in this court's summary judgment opinion of July 2, 1993. Because the elements of the state law causes of action are different from those of the dismissed federal claims, plaintiffs assert that the factual and legal issues to be proved are different from those previously decided. Therefore, plaintiffs maintain, collateral estoppel should not bar them from litigating their state law claims before the arbitration panel. In deciding this matter, I will first enumerate the findings in my July 2 decision, and then consider their preclusive effect on plaintiffs' state law claims.

### 1. *Findings in This Court's July 2, 1993 Opinion*

This court's decision of July 2, 1993, (*Sheldon* ) dismissed Oppenheimer and Altman based on the failure of plaintiffs' federal law claims only. Those claims were brought under section 10(b) of the 1934 Act; Rule 10(b)(5); section 12(2) of the 1933 Act; sections 17 and 15 of the 1933 Act; and section 20(a) of the 1934 Act. Any legal conclusions reached as to those claims were based on

federal law and do not, in and of themselves, preclude plaintiffs from now making their state law claims. Where litigating their state law claims would require revisiting factual findings from my July 2 opinion, however, the state law claims are barred under the doctrine of collateral estoppel. *Guzowski,* 849 F.2d at 255 n. 4 (6th Cir.1988).

For purposes of clarity, I will list the factual findings from my July 2 opinion relevant to this motion:

a. There was no direct sale or purchase of a security between plaintiffs and defendants Oppenheimer and Altman. *Id.* at 1270.

b. "Plaintiffs deliberately transferred to Smith/DSV full authority to make investment decisions concerning the Sheldon Plans." *Id.*

c. There was no direct communication between the Careses and defendants Oppenheimer and Altman. *Id.* at 1275.

d. "There exists no evidence which leads the court to conclude that defendants Oppenheimer and Altman had or should have had reason to believe that Smith/DSV, whom the Careses had independently and voluntarily entrusted with their accounting and investment advisory/management work, were involved in misdeeds." *Id.* at 1270.

e. Oppenheimer and Altman sent to Smith accurate confirmation slips and monthly statements reflecting the activity in the Oppenheimer account. *Id.* at 1267.

f. Oppenheimer and Altman were not a party to the Investment Management Agreement (undisputed fact). *Id.* at 1270.

g. "No evidence exists in this record that plaintiffs and defendants Oppenheimer and Altman had a special relationship of trust or confidence." *Id.* at 1271.

h. "Plaintiffs never sought nor received advice of any kind from [Oppenheimer and Altman]." *Id.*

i. "Defendants never advised the Careses nor had any contact with them." *Id.*

j. "Defendants acted merely as the instrument for executing the transactions directed by Smith to whom plaintiffs had

delegated their decision-making power over their investments." *Id.*

k. "There is no evidence to support a finding that defendants Oppenheimer and Altman at any time controlled plaintiffs' account." *Id.* at 1272.

l. "The evidence clearly establishes that Smith exercised sole discretion over the account with Oppenheimer and Altman." *Id.*

m. "Defendants ... did not have any supervisory authority over Smith ..." *Id.*

n. "Plaintiffs have produced no evidence that defendants induced these [buy and sell orders] or acted with fraudulent intent to carry out these transactions in order to create commissions." *Id.* at 1273. "Plaintiffs have also failed to establish that Oppenheimer and Altman acted with willful and reckless disregard of the customer's interests." *Id.* at 1274.

### 2. *Plaintiffs' State Law Claims Now Before the Arbitrators*

Now pending before the NASD arbitrators are claims that Oppenheimer and Altman churned plaintiffs' account, engaged in margin and option trading and other inappropriate transactions. These actions, plaintiffs contend, constituted common law fraud, innocent misrepresentation and/or silent fraud. Plaintiffs further claim that Oppenheimer and Altman acted negligently, in breach of their common law fiduciary duty to plaintiffs, and in violation of the Michigan Uniform Securities Act, Mich.Stat.Ann. § 19.776(101), *et seq.*, Mich.Comp.Laws § 451.501, *et seq.*, and the Michigan Consumer Protection Act, Mich.Comp.Laws § 445.901, *et seq.*. Although it is not entirely clear whether plaintiffs intend to pursue all of these claims before the arbitration panel, I will discuss the impact of my July 2, 1993, findings on each of them.

#### a. *Fraud*

Plaintiffs have claimed that Altman fraudulently failed to inform plaintiffs that the investments their agent Smith was making were risky margin and option trades. They assert that Oppenheimer and Altman knew or should have known the investments were inconsistent with the purposes of the employee benefit plans as well as applicable state and federal law. Plaintiffs' Statement of Claim to Director of Arbitration at 6–7. Plaintiffs claim that this nondisclosure to the plans constituted fraud, silent fraud and/or innocent misrepresentation under Michigan law.

#### i. *Common Law Fraud*

Proof of common law fraud in Michigan requires a demonstration:

> 1) That defendant made a material misrepresentation; 2) that it was false; 3) that when [defendant] made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; 4) that he made it with the intention that it should be acted upon by plaintiff; 5) that plaintiff acted in reliance upon it; and 6) that plaintiff thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

*U.S. Fidelity & Guaranty,* 412 Mich. at 114, 313 N.W.2d 77, *quoting, Candler v. Heigho,* 208 Mich. 115, 121, 175 N.W. 141 (1919).

Plaintiffs assert that the finding in my July 2 opinion that no evidence existed to establish that Oppenheimer and Altman "acted with intent to defraud or with willful and reckless disregard of the customer's interests," *Sheldon,* 828 F.Supp. at 1274, should not be preclusive. They state that the finding was one of two factual bases for my legal conclusion that plaintiffs had no valid churning claim under federal law. Because it was not the sole basis for that legal conclusion, plaintiffs appear to assert that it was not necessary to the judgment and therefore should not be preclusive.

Plaintiffs' theory would deny preclusive effect to all factual findings that serve as alternative grounds for a judgment. This theory is inconsistent, however, with the First Restatement of Judgments and current court decisions. These authorities accord preclusive effect to each of a set of alternative grounds for a single judgment. *Restatement*

*of Judgments,* § 68, comment n (1942), *cited in,* 18 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 4421 n. 19; 18 Wright, Miller & Cooper, § 4421 n. 20, citing cases.

The finding in my July 2 opinion that Oppenheimer and Altman neither intended to defraud plaintiffs nor acted with willful disregard of their interests was one of two grounds for my conclusion that no valid churning claim was provable against defendants. *Sheldon,* 828 F.Supp. at 1272–74. Thus the issue of scienter was necessarily decided in that opinion and may not be relitigated before the arbitrators. Since scienter is an essential element of common law fraud in Michigan, plaintiffs are now precluded from asserting that claim before the arbitrators.

### ii. *Innocent Misrepresentation*

■ Plaintiffs next contend that two common law doctrines recognized in Michigan allow them to prove fraud without a demonstration of scienter. One is the doctrine of innocent misrepresentation, and the other is the silent fraud rule.

■ The doctrine of innocent misrepresentation allows a plaintiff to make a claim of misrepresentation without proving either the defendant's knowledge of the falsity of his or her statement, or the defendant's intention that plaintiff would rely upon the statement. *U.S. Fidelity & Guaranty v. Black,* 412 Mich. 99, 117, 313 N.W.2d 77 (1981). Proof of innocent misrepresentation requires a party to demonstrate that (1) privity of contract existed between it and the party charged; (2) the party charged made false representations in connection with the contract; (3) the party asserting the claim was deceived by the representations; (4) he or she relied upon the representations to his or her detriment; and (5) his or her loss inured to the benefit of the other party. *Id.* at 116, 313 N.W.2d 77, *quoting,* 37 Am.Jur. 2d, Fraud and Deceit, § 195 at 257.

Because plaintiffs' fraud claim is based on the terms of the Investment Management Agreement, to which I previously found defendants Oppenheimer and Altman were not parties, *Sheldon,* 828 F.Supp. at 1270, plaintiffs are precluded from advancing this theory at arbitration.

The first requirement for proof of an innocent misrepresentation claim is the existence of contractual privity between the parties. Plaintiffs have asserted that such privity existed based on the Option Account Information Form signed at the initiation of the plans' Oppenheimer account by Smith, as plaintiffs' agent, and by Altman on behalf of Oppenheimer. Exhibit 5 to Oppenheimer and Altman's Motion for Summary Judgment. It listed "income, growth and trading profits" as the investment objectives for the account. These investment objectives differed from those in the Investment Management Agreement ("IMA"), which had been executed earlier between Smith and plaintiffs, to grant Smith authority to make investment decisions for plaintiffs. The plans' investment objectives as stated in the IMA were "growth and preservation of capital."

Plaintiffs assert in arbitration that Smith's handling of the plans' account involved numerous high risk investments inconsistent with the "preservation of capital" goal in the Investment Management Agreement. They claim that Oppenheimer and Altman had a duty to be aware of the plans' investment goals as set forth in the IMA, a duty to be aware of Smith's transactions that were inconsistent with those goals, and a duty to notify plaintiffs of those inconsistent transactions. Their failure to so notify the plaintiffs, it is contended, constituted an unlawful omission. Plaintiffs make no claim that any misrepresentations or omissions by defendants were made in connection with the creation or fulfillment of the Option Form agreement. Thus, plaintiffs' innocent misrepresentation claim is based solely on representations made in connection with the IMA.

■ An innocent misrepresentation claim based upon the IMA, however, is precluded by my previous finding that Oppenheimer and Altman were not a party to that agreement. *Sheldon,* 828 F.Supp. at 1270. The terms and conditions of a contract may not be enforced against a person not a party to it. *Borg–Warner v. Dep't of State,* 433 Mich. 16, 22, 444 N.W.2d 786, 788 (1989) (mutual assent required to form a legally enforceable

contract). As no misrepresentation claim is made in connection with the Option Form, the privity between plaintiffs and defendants arising from that contract is of no relevance to plaintiffs' fraud claims.

### iii. *Silent Fraud*

 The plaintiffs are also precluded from proceeding at arbitration on a theory of silent fraud. A successful claim of silent fraud requires proof that (1) defendant was under a legal or equitable duty to disclose; and (2) that defendant failed to speak when that duty so required. *U.S. Fidelity & Guaranty,* 412 Mich. at 125, 313 N.W.2d 77, *citing,* 37 Am.Jur.2d, Fraud and Deceit, § 146.

As stated above, I found in my decision of July 2, 1993, that "[s]ince there was no communication between the Careses and defendants, there could be no misrepresentations or omissions." *Id.* at 1275. Thus plaintiffs are now precluded from relitigating the issue of nondisclosures.

I further found in *Sheldon* that because of their lack of contact with the plaintiffs, Oppenheimer and Altman owed plaintiffs no duty. I concluded that no "special relationship of trust or confidence" existed between the parties. *Sheldon,* 828 F.Supp. at 1271. Even had a duty existed, I further found, Oppenheimer and Altman fulfilled the duty by sending confirmation slips and monthly statements to plaintiffs' investment advisor Smith. *Sheldon,* 828 F.Supp. at 1270–71.

These findings preclude plaintiffs from proving silent fraud under Michigan law. Courts have consistently held that section 10(b) of the 1934 Act is co-extensive with common law fraud claims. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489 (6th Cir. 1990) ("an allegation of churning is an allegation of fraud."); *Doll v. James Martin Assoc.,* 600 F.Supp. 510, 526 (E.D.Mich.1984) (finding that Congress had "graft[ed] ... the common-law features of fraud onto the federal securities laws"). A recent case observed that "[t]he elements of common law fraud in Michigan ... bear a striking resemblance to the elements of a 10b–5 claim." *Lassater v. Goss,* Fed.Sec.L.Rptr. ¶ 96,881, p. 93,597–93,-600 (E.D.Mich.1991).

As stated above, I found previously that to the extent Oppenheimer and Altman owed plaintiffs a duty of disclosure, they fulfilled it through their mailings to Smith. In light of the correlation between the federal law under which those decisions were rendered and the state claims now before the arbitrators, I find that the issues in the state claims are precluded by the decisions of the federal claims. Arbitration of plaintiffs' fraud claims is consequently enjoined.

### b. *Negligence and Breach of Fiduciary Duties*

 Plaintiffs further allege that Oppenheimer and Altman were negligent and in breach of their fiduciary duties in failing to inform plaintiffs of Smith's risky investments. As with the fraud claims, proof of these two theories requires a demonstration that Oppenheimer and Altman owed a duty of disclosure to the plaintiffs. *Riddle v. McLouth Steel Products Corp.,* 440 Mich. 85, 485 N.W.2d 676 (1992) (existence of a legal duty and breach of that duty are elements of a negligence claim).

As explained above in the context of the silent fraud claim, I found in *Sheldon* that because of the lack of relationship or even contact between plaintiffs and Oppenheimer and Altman, defendants owed no duty to the plaintiffs. I found that plaintiffs "deliberately transferred to Smith/DSV full authority to make investment decisions concerning the Sheldon Plans," *id.* at 1270, and that there was no "evidence to support some type of relationship creating a duty or obligation between plaintiffs and defendants ..." *Id.* at 1277.

 Plaintiffs have provided the court with no support for their position that a duty under state law did exist between them and Oppenheimer and Altman. Indeed, a Michigan case closely analogous to the one at bar reveals that a stockbroker owes no duty of disclosure under Michigan law to a customer who has specifically authorized another person to manage the account. In *Zimmerman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 151 Mich.App. 566, 391 N.W.2d 353 (1986), the plaintiff and her son jointly owned

a brokerage account. The plaintiff agreed expressly in writing that the broker would take orders from her son as well as herself, and thereafter made no transactions on the account. *Id.* at 569, 391 N.W.2d at 354. Confirmation slips and monthly statements from the broker were mailed to her son. *Id.* at 573, 391 N.W.2d at 356. When her son subsequently depleted the account, the court did not sustain plaintiff's breach of fiduciary duty claim against the broker, holding that "a broker's mailing of confirmation slips and monthly statements to one owner's residence satisfies the broker's obligation to keep both customers reasonably informed of account activity." *Id.*

Here, as in *Zimmerman,* defendant broker mailed confirmation slips and monthly statements to Smith, the party who made all decisions with respect to the account, as he was fully and explicitly authorized by plaintiffs to do. Thus, under *Zimmerman,* plaintiffs will be unable under state law to prove that Oppenheimer and Altman failed to satisfy any existing duty of disclosure to plaintiffs.

Thus my findings under federal law that plaintiffs owed no duty to the defendants, and that to the extent any duty did exist it was fulfilled, preclude plaintiffs from advancing their negligence and breach of fiduciary duty claims in arbitration. Proceeding on those claims would require plaintiffs to prove that defendants did owe a duty of disclosure to plaintiffs. But I have already decided that precise issue under federal law, and plaintiffs have offered no support for their claim that a greater duty exists under state law. Therefore, the doctrine of collateral estoppel prohibits litigation of plaintiffs' negligence and breach of fiduciary duty claims before the arbitrators. Consequently, arbitration of plaintiffs' negligence and breach of duty claims is enjoined.

### c. *Breach of Contract*

█ Plaintiffs are similarly precluded from litigating their breach of contract claim before the arbitrators. As in the context of their innocent misrepresentation theory, discussed above, plaintiffs attempt to base a breach of contract claim on the contractual

privity between them and Oppenheimer and Altman created by the Option Form agreement. But because plaintiffs assert a breach of the terms included in the Investment Management Agreement only, and not the Option Form, the Option Form is irrelevant to this claim. Furthermore, in light of my previous finding that the defendants were not a party to the IMA, plaintiffs are precluded from now litigating the issue of defendants' obligations under that agreement. Therefore, plaintiffs are precluded from litigating their breach of contract claim, and arbitration of that claim is enjoined.

For these reasons, arbitration of plaintiffs' contract claim is enjoined.

### d. *Michigan Uniform Securities Act*

Plaintiffs made two state statutory claims, the first of which is under the Michigan Uniform Securities Act ("MUSA"), Mich.Stat. Ann. § 19.776(101), *et seq.,* Mich.Comp.Laws § 451.501, *et seq.* Mich.Comp.Laws § 451.-810(a)(2) provides that a person who:

> offers or sells a security or commodity contract by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

This language directly parallels section 12(2) of the 1933 Act, which states that any person who:

> offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the

burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him.

15 U.S.C. § 77(1)(2).

■ In my analysis of plaintiffs' claim under section 12(2) of the federal 1933 Act, I previously found that no direct sale or purchase of a security had occurred between plaintiffs and Oppenheimer and Altman. As a result, plaintiffs had no claim under section 12(2). *Sheldon*, 828 F.Supp. at 1270. To my knowledge, no interpretation of the sale or purchase requirement in the Michigan statute has been made by the Michigan Supreme Court. However, in light of the similarity in the language of this state provision and the federal law, I conclude that my earlier finding that no direct sale or purchase of a security existed between plaintiffs and Oppenheimer and Altman precludes plaintiffs from asserting a claim under the MUSA. Arbitration of this claim is enjoined.

e. *Michigan Consumer Protection Act*

■ Plaintiffs' final allegation is that defendants Oppenheimer and Altman violated the Michigan Consumer Protection Act ("MCPA"), Mich.Comp.Laws § 445.901, *et seq.*, Mich.Stats.Ann. § 19.418(1), *et seq.* Defendants maintain that securities cases are exempt from the MCPA, and that therefore plaintiffs should be prevented from proceeding on this claim.

I did not address plaintiffs' MCPA claim in my July 2 opinion. Consequently, I did not then, nor do I now, decide whether securities cases are specifically exempted from the MCPA. That is a matter properly before the NASD panel.[1] Since litigation of an MCPA claim will involve issues that I did not consider in my earlier opinion, plaintiffs' MCPA claim is in no way barred from arbitration under the doctrines of res judicata or collateral estoppel. Arbitration of the claim poses

no threat to the finality of my earlier judgment.

For these reasons, I deny the request to enjoin arbitration of this claim, and defendant's motion to enjoin or dismiss this claim is denied.

### III.

### *OTHER MOTIONS*

Plaintiffs' cross-motions to compel Smith to attend plaintiffs' arbitration and to prohibit Oppenheimer and Altman and their counsel from interfering with the plaintiffs' witnesses at arbitration are more appropriately brought before the arbitration panel to the extent plaintiffs wish to pursue it. Therefore, it is denied without prejudice.

Finally, defendants Dolinka, Smith & VanNoord (individuals and partnership) have requested that this decision not prejudice their anticipated claim for contribution against Oppenheimer. It is not my intention that any such prejudice result from my decision today. Beyond proper application of res judicata and collateral estoppel principles, this opinion will have no effect on any future claims among any parties involved at any time in this action.

### IV.

### *CONCLUSION*

For the reasons above, the motion of defendants Oppenheimer and Altman to enjoin plaintiffs' arbitration claims against them is granted, except as to plaintiffs' claim under the Michigan Consumer Protection Act. As to that claim, plaintiffs may proceed with arbitration.

For the reasons above, plaintiffs' cross-motion is denied.

---

1. This issue is not free from doubt in this circuit. *See, Caproni v. Prudential Securities, Inc.,* 15 F.3d 614 (6th Cir.1994); *but see, Lawson v. American Security Insurance,* File No. 88–CV–10280–BC, Slip Op. at 6 (E.D.Mich.1989), *quoting, Bridges v. Fire Insurance Co. of Quaker City,* No. 84–3179, Sept. 4, 1985 (bench opinion in which then District Judge Guy stated that the "common-sense interpretation" of the MCPA excludes from the statute's coverage only activities 'specifically authorized' by another federal or state authority, and not all activities generally regulated by another authority).