HURON TOOL AND ENGINEERING COMPANY v PRECISION
CONSULTING SERVICES, INC

Docket No. 161050. Submitted November 1, 1994, at Detroit. Decided
March 20, 1995, at 9:25 A.M.

> Huron Tool and Engineering Company brought an action in the
> Huron Circuit Court against Precision Consulting Services, Inc.,
> and Joseph B. Wulffenstein for damages resulting from alleg-
> edly defective computer software supplied by the defendants,
> alleging breach of contract, breach of warranty, fraud, and
> misrepresentation. The parties entered into an agreement in
> November 1986 whereby the defendants would supply certain
> software, training, and services to the plaintiff. The plaintiff
> paid the full purchase price by May 13, 1988, and the defen-
> dants performed certain additional work in November 1988 and
> July 1991, for which the plaintiff was billed separately. The
> defendants moved for summary disposition on the basis that
> this July 20, 1992, action was not filed in a timely fashion
> because it had not been filed within four years of May 13, 1988,
> and thus was barred by the four-year statute of limitation
> found in the Sales Article of the Uniform Commercial Code,
> MCL 440.2725(1); MSA 19.2725(1). The plaintiff argued that the
> claim did not accrue until November 1988 at the earliest and
> that the fraud claim was independent of its contractual claims
> and was outside the scope of the UCC statute of limitation. The
> court, M. Richard Knoblock, J., rejected the plaintiff's argu-
> ments, applied the UCC period of limitation to all of the plain-
> tiff's claims, and granted summary disposition for the defen-
> dants. The plaintiff appealed.
>
> The Court of Appeals held:
>
> 1. Where a purchaser's expectations in a sale are frustrated
> because the product purchased is not working properly, the
> remedy for the economic loss is in contract alone. Accordingly,
> tort claims seeking nothing more than damages arising out of

REFERENCES

Am Jur 2d, Contracts § 230; Damages § 45.

Computer sales and leases: breach of warranty, misrepresentation,
or failure of consideration as defense or ground for affirmative
relief. 37 ALR4th 110.

the failure of goods or services to satisfy a bargained-for requirement are barred by the operation of the economic loss doctrine.

2. The economic loss doctrine, however, does not bar a claim of fraud in the inducement of a contract for goods and services, because such an intentional tort is relevant to the ability of the party to negotiate fair terms and to make an informed decision with respect to the creation of the contract.

3. Although a claim of fraud in the inducement would not be subject to the economic loss doctrine and thus would not be subject to the UCC statute of limitation, the fraud claim pleaded by the plaintiff did not involve fraud in the inducement but rather fraudulent representations relative to the quality and characteristics of the software, a tort claim that is subject to the economic loss doctrine and thus subject to the UCC limitation period. Accordingly, the trial court's dismissal of the plaintiff's fraud claim was proper.

4. Because there is a disputed question of fact concerning when the contract claims arose, it was error for the trial court to resolve that question of fact and to grant summary disposition for the defendant. There is nothing in the record to compel the conclusion that the action accrued more than four years before the action was commenced.

Affirmed in part, reversed in part, and remanded.

CONTRACTS — TORTS — ECONOMIC LOSS DOCTRINE — FRAUD IN THE INDUCEMENT.

The economic loss doctrine does not bar a claim of fraud in the inducement of a contract for goods and services, because such an intentional tort is relevant to the ability of the party to negotiate fair terms and to make an informed decision with respect to the creation of the contract.

*John S. Paterson* and *Kimberly A. Tomczyk,* for the plaintiff.

*O'Sullivan, Beauchamp, Kelly & Whipple* (by *David C. Whipple* and *David Allen Keyes*), for the defendants.

Before: FITZGERALD, P.J., and MICHAEL J. KELLY and E. R. POST,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

MICHAEL J. KELLY, J. Plaintiff appeals as of right an order of the circuit court granting defendants' motion for summary disposition under MCR 2.116(C)(7). We affirm in part, reverse in part, and remand.

I

The parties entered into an agreement for the sale of a computer software system in November 1986. The agreement provided that defendant Precision Consulting Services, Inc., would provide plaintiff Huron Tool and Engineering Company with "system's design, programming, training and installation services." Plaintiff paid the full purchase price by May 13, 1988. After that date, defendants performed additional work on the system in order to customize the software for plaintiff's use. Each time a modification was made, defendants billed plaintiff separately. Included in the additional work was the installation of a program for job closing in November 1988 and a shop order processing application in July 1991.

Because of alleged defects in the software system, plaintiff filed suit on July 20, 1992, alleging breach of contract and warranty, fraud, and misrepresentation.[1] Defendants filed a motion for summary disposition under MCR 2.116(C)(7), claiming that plaintiff's claims were barred by the four-year statute of limitation in the Uniform Commercial Code, MCL 440.2725(1); MSA 19.2725(1). Plaintiff argued that its claim did not accrue until November 1988 at the earliest. Plaintiff also argued that its fraud claim was independent of its contractual claims and, therefore, outside the scope of the UCC

---

[1] In discussing the viability of plaintiff's intentional tort claims of fraud and misrepresentation, we will refer in general to plaintiff's "fraud claim."

statute of limitation. The circuit court rejected plaintiff's arguments and, applying the UCC limitation period to all of plaintiff's claim, dismissed the entire action under MCR 2.116(C)(7).

## II

The central dispute on appeal concerns plaintiff's fraud claim. At issue is whether the economic loss doctrine bars plaintiff from bringing a fraud claim independent of its contractual claims under the UCC. Defendants argue that the economic loss doctrine bars any action in tort, including fraud, where plaintiff suffers only economic damages and has a cause of action in contract under the UCC. Although defendants cite *Neibarger v Universal Cooperatives, Inc,* 439 Mich 512; 486 NW2d 612 (1992), in support of their position, that decision only addressed the application of the economic loss doctrine to nonintentional torts. The viability of the doctrine in actions for intentional torts, particularly fraud, remains an issue unaddressed in Michigan. After review of decisions in other jurisdictions and of the history and rationale of the economic loss doctrine in Michigan, we conclude that fraud in the inducement is an exception to the doctrine, but that plaintiff has failed to plead such fraud and, therefore, is restricted to its contractual remedies under the UCC.

## A

The economic loss doctrine provides that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Kennedy v Columbia Lumber & Mfg Co,*

299 SC 335, 345; 384 SE2d 730 (1989), quoted in *Neibarger, supra* at 520. Although our Supreme Court's most authoritative pronouncement concerning the applicability of the economic loss doctrine in Michigan did not appear until recently in *Neibarger, supra,* the doctrine has firm roots in Michigan jurisprudence. See, e.g., *McCann v Brody-Built Construction Co, Inc,* 197 Mich App 512; 496 NW2d 349 (1992); *Rust-Pruf Corp v Ford Motor Co,* 172 Mich App 58; 431 NW2d 245 (1988); *Great American Ins Co v Paty's, Inc,* 154 Mich App 634; 397 NW2d 853 (1986); *A C Hoyle Co v Sperry Rand Corp,* 128 Mich App 557; 340 NW2d 326 (1983); *McGhee v GMAC Truck & Coach Division,* 98 Mich App 495; 296 NW2d 286 (1980) (applying the economic loss doctrine).

In *Neibarger,* the plaintiffs, purchasers of allegedly defective products, attempted to circumvent the strict UCC limitation period by pleading claims sounding in tort.[2] 439 Mich 517. Applying the economic loss doctrine, the Supreme Court determined that the plaintiffs' tort claims were subject to the UCC because they alleged damages amounting to nothing more than economic losses in the form of product defects. *Id.* at 530. These damages merely reflected a concern about the quality expected by the buyer and promised by the seller, which is the essence of a warranty action under

---

[2] Although the three-year statute of limitation for tort claims invoked by the plaintiffs in *Neibarger,* MCL 600.5805(9); MSA 27A.5805(9), was actually shorter than the four-year UCC limitation period, it was nonetheless more advantageous for the plaintiffs. Whereas the UCC limitation period began to run "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," MCL 440.2725(2); MSA 19.2725(2), the accrual date of a claim under MCL 600.5805(9); MSA 27A.5805(9) was subject to the discovery rule. In this case, plaintiff seeks to circumvent the four-year UCC statute of limitation by alleging fraud, presumably because it is subject to the more liberal six-year limitation period in MCL 600.5813; MSA 27A.5813. *Blue Cross & Blue Shield of Michigan v Folkema,* 174 Mich App 476, 480-481; 436 NW2d 670 (1988).

the UCC. *Id.* at 531. Because the UCC already ad-
dressed the plaintiffs' concerns, the Court held
that the plaintiffs could not pursue an independent
tort claim. Any other holding, the Court added,
would render the UCC meaningless and " 'contract
law would drown in a sea of tort.' " *Id.* at 528,
quoting *East River Steamship Corp v Transamer-
ica Delaval Inc,* 476 US 858, 866; 106 S Ct 2295; 90
L Ed 2d 865 (1986).

B

The tort claims asserted by the plaintiffs in
*Neibarger* sounded in negligence and strict liabil-
ity. Although the *Neibarger* Court discussed the
economic loss doctrine in broad terms, referring
generally to the viability of "tort" claims under
the doctrine without further distinction, we find
nothing in the opinion to suggest that the Court's
holding extended beyond the limited facts of that
case to address the viability of intentional torts
such as fraud. We therefore reject defendants'
simple argument that because "tort" claims for
economic losses are barred, and because fraud is a
"tort," plaintiff's fraud claim is barred. Instead, a
more thorough analysis of the issue is appropriate,
one that takes into consideration the underlying
policies of tort and contract law and seeks to
define the meaning of "tort" within the economic
loss doctrine. To this end, we consider helpful the
decisions of other state and federal courts concern-
ing the same issue.

Although the issue has been addressed in only a
handful of jurisdictions, the emerging trend is
clearly toward creating an exception to the eco-
nomic loss doctrine for a select group of inten-
tional torts. See, e.g., *Interstate Securities Corp v
Hayes Corp,* 920 F2d 769, 776, n 11 (CA 11, 1991)

(defamation); *Northern States Power Co v Int'l Telephone & Telegraph Corp,* 550 F Supp 108 (D Minn, 1982) (fraudulent inducement to contract and misrepresentation); *Moorman Mfg Co v Nat'l Tank Co,* 91 Ill 2d 69; 435 NE2d 443 (1982) (intentional misrepresentation); *Werblood v Columbia College of Chicago,* 180 Ill App 3d 967; 536 NE2d 750 (1989) (tortious interference with prospective economic advantage); *Santucci Construction Co v Baxter & Woodman, Inc,* 151 Ill App 3d 547; 502 NE2d 1134 (1987) (intentional interference with contractual relations). With regard to the specific intentional tort of fraud, courts generally have distinguished fraud in the inducement as the only kind of fraud claim not barred by the economic loss doctrine. We believe this distinction is warranted in light of the rationale of the economic loss doctrine:

> The distinction is critical, for the essence of the "economic loss" rule is that contract law and tort law are separate and distinct, and the courts should maintain that separation in the allowable remedies. There is a danger that tort remedies could simply engulf the contractual remedies and thereby undermine the reliability of commercial transactions. Once the contract has been made, the parties should be governed by it.
>
> Fraud in the inducement, however, addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort. [*Williams Electric Co, Inc v Honeywell, Inc,* 772 F Supp 1225, 1237-1238 (ND Fla, 1991).]

The decision of the Florida federal district court in *Williams Electric* comports with the rationale of the economic loss doctrine as expressed by the Florida Supreme Court in *Florida Power & Light Co v Westinghouse Electric Corp,* 510 So 2d 899

(Fla, 1987). There, the court held that the doctrine prohibited a buyer under a contract for goods to recover economic losses in tort without a claim for personal injury or for damage to property other than the goods sold. This holding reflects the rule adopted by our Supreme Court in *Neibarger, supra.* The *Florida Power* court explained that the policy behind the doctrine "encourages parties to negotiate economic risks through warranty provisions and price." 510 So 2d 901. Another Florida court noted that the doctrine "shield[s] a defendant from unlimited liability for all economic consequences of a negligent act, particularly in a commercial setting, thus keeping the risk of liability reasonably calculable." *Bay Garden Manor Condominium Ass'n, Inc v James D Marks Associates, Inc,* 576 So 2d 744, 745 (Fla App, 1991), citing *Local Joint Exec Bd, Culinary Workers Union, Local 226 v Stern,* 98 Nev 409, 410; 651 P2d 637 (1982). This policy rationale has been recognized by federal courts applying Michigan law. See *Neibarger, supra* at 525-526, quoting *Consumers Power Co v Mississippi Valley Structural Steel Co,* 636 F Supp 1100, 1105 (ED Mich, 1986). It also was recognized implicitly by this Court in *Auto-Owners Ins Co v Chrysler Corp,* 129 Mich App 38, 42; 341 NW2d 223 (1983). There, this Court held that the economic loss doctrine does not apply where there is no contractual relationship between the parties —that is, where the parties have never been in a position to negotiate the economic risks themselves. See also *Neibarger, supra* at 525.

In light of this rationale, we decline to adopt defendants' position that the economic loss doctrine precludes *any* fraud claim. Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely— which normally would constitute grounds for in-

voking the economic loss doctrine—but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior. In contrast, where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the other party is still free to negotiate warranty and other terms to account for possible defects in the goods.

The distinction between fraud in the inducement and other kinds of fraud is the same as the distinction drawn by a New Jersey federal district court between fraud extraneous to the contract and fraud interwoven with the breach of contract. *Public Service Enterprise Group, Inc v Philadelphia Elec Co,* 722 F Supp 184, 201 (D NJ, 1989). With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort.

> Such fraud is not extraneous to the contractual dispute among the parties, but is instead but another thread in the fabric of [the] plaintiffs' contract claim. . . . [It] is undergirded by factual allegations identical to those supporting their breach of contract counts. . . . This fraud did not induce the plaintiffs to enter into the original agreement nor did it induce them to enter into additional undertakings. It did not cause harm to the plaintiffs distinct from those caused by the breach of contract . . . . [*Id.*]

See also *Theuerkauf v United Vaccines Division of Harlan Sprague Dawley, Inc,* 821 F Supp 1238, 1241-1242, n 1 (WD Mich, 1993) (declining to address, but recognizing as distinct, the issue whether the economic loss doctrine applies under Michigan law to a claim of fraud in the induce-

ment arising independent of a contract); *Serina v Albertson's, Inc,* 744 F Supp 1113, 1118 (MD Fla, 1990) (adopting the holding in *Public Service Enterprise, supra*).

C

Plaintiff asserts that the UCC explicitly preserves its right to maintain a common-law fraud action independent of its contractual claims, citing MCL 440.1103; MSA 19.1103:

> Unless displaced by the particular provisions of this act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

Plaintiff's position, however, only begs the question before us now. The provision cited by plaintiff merely keeps intact those areas of the common law not superseded by specific provisions of the UCC. The body of common law sought to be preserved in this provision is the same body of law in which the economic loss doctrine arose. Although the Supreme Court's discussion of the economic loss doctrine in *Neibarger* was linked closely to the UCC context of the case, the doctrine is not limited to the UCC. Thus, the issue remains whether, even assuming that the law of fraud remains unchanged, plaintiff may pursue a fraud claim under the economic loss doctrine in light of its contractual remedies. We hold that plaintiff may only pursue a claim for fraud in the inducement extraneous to the alleged breach of contract.

Our holding heeds the Supreme Court's admonition to avoid confusing contract and tort law.

*Neibarger, supra* at 529. The danger of allowing contract law to " 'drown in a sea of tort' " exists only where fraud and breach of contract claims are factually indistinguishable. *Id.* at 528. However, a claim of fraud in the inducement, by definition, redresses misrepresentations that induce the buyer to enter into a contract but that do not in themselves constitute contract or warranty terms subsequently breached by the seller.

### D

Having determined the proper analytical framework for evaluating plaintiff's fraud claim, we now turn to the facts of this case. Our task is to decide whether plaintiff's fraud claim is viable apart from its contractual claims such that the restrictive four-year limitation period of the UCC does not apply. To that end, we must look to the four corners of plaintiff's complaint, accept all factual allegations as true, and determine whether the fraud claim falls outside the ambit of the economic loss doctrine. We hold that it does not. The fraudulent representations alleged by plaintiff concern the quality and characteristics of the software system sold by defendants. These representations are indistinguishable from the terms of the contract and warranty that plaintiff alleges were breached. Plaintiff fails to allege any wrongdoing by defendants independent of defendants' breach of contract and warranty.[3] Because plaintiff's allegations of fraud are not extraneous to the contractual dispute, plaintiff is restricted to its contractual remedies under the UCC. The circuit court's dismissal of plaintiff's fraud claim was proper.

[3] We also are influenced by the lack of specificity in plaintiff's fraud claims. Claims of fraud must be specifically pleaded. *Zimmerman v Merrill Lynch, Pierce, Fenner & Smith, Inc,* 151 Mich App 566, 574; 391 NW2d 353 (1986).

### III

Our analysis does not end with the application of the economic loss doctrine to plaintiff's claim. Plaintiff also challenges the application of the UCC statute of limitation to its remaining contract claims. Specifically, plaintiff claims that the circuit court improperly made findings of fact regarding the date on which its contract with defendants was complete and its contract claims accrued.

The UCC provides a four-year limitation period for actions for breach of contract. MCL 440.2725(1); MSA 19.2725(1). The accrual date is defined as follows:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered. [MCL 440.2725(2); MSA 19.2725(2).]

"Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery." MCL 440.2503(1); MSA 19.2503(1). In the sale of machinery, the seller typically must complete the machine and tender performance consistent with the contract. See *Detroit Power Screwdriver Co v Ladney*, 25 Mich App 478; 181 NW2d 828 (1970). Under the UCC statute of limitation, plaintiff's contractual claims are barred if they accrued before July 20, 1988.

When reviewing a motion for summary disposi-

tion under MCR 2.116(C)(7), a court must accept as true the plaintiff's well-pleaded allegations and construe them in the plaintiff's favor. *Harris v Allen Park,* 193 Mich App 103, 106; 483 NW2d 434 (1992). The court must look to the pleadings, affidavits, or other documentary evidence to see if there is a genuine issue of material fact. If no facts are in dispute, whether the plaintiff's claim is barred by the statute of limitations is a question for the court as a matter of law. *Id.* However, if a material factual dispute exists such that factual development could provide a basis for recovery, summary disposition is inappropriate. See *Marrero v McDonnell Douglas Capital Corp,* 200 Mich App 438, 441; 505 NW2d 275 (1993).

The record in this case reveals a material factual dispute. Plaintiff submitted an affidavit of its vice president, Gene Legault, stating that the original software system was to include programs capable of doing inventory and shop order processing and that these were not programmed until at least November 1988. Defendant Wulffenstein submitted an affidavit stating that a full software system was delivered, accepted, and paid for before May 13, 1988. The circuit court's resolution of this conflict entailed elements of fact finding. For example, it questioned the credibility of Legault's statement that part of the system was not installed in November 1988 in light of defendant Wulffenstein's statement that modifications to the system after May 1988 were billed, accepted, and paid for separately under oral contract. The circuit court's role was simply to take Legault's affidavit at face value. It did not do so.

Defendants nevertheless argue that the conflict between the affidavits is immaterial because it is undisputed that plaintiff tendered full payment in May 1988, and the contract defined this as accep-

tance and completion. Defendants read too much into the terms as defined in the contract. The provision invoked by them merely states that plaintiff's last payment was due upon completion of installation. We find nothing in the language to suggest that full payment was to be deemed tantamount to completion of the contract. Defendants' interpretation would penalize the purchaser who prepays and would reward delay.

The circuit court erred in granting defendants' motion for summary disposition with respect to plaintiff's contractual claims.

Affirmed in part, reversed in part, and remanded.