**VALLEYSIDE DAIRY FARMS, INC., a Michigan Corporation; E. Robert Grams and Karen E. Grams, Plaintiffs,**

v.

**A.O. SMITH CORPORATION and A.O. Smith Harvestore Products, Inc., jointly and severally, Defendants.**

No. 1:94–CV–53.

United States District Court, W.D. Michigan, Southern Division.

Oct. 26, 1995.

John E. Anding, Drew, Cooper & Anding, Grand Rapids, MI, for Valleyside Dairy Farms, Inc., E. Robert Grams, Karen E. Grams, Grams and Grams, Ed Grams and Sons, de facto Michigan partnerships.

William J. Brennan, Dykema Gossett P.L.L.C., Grand Rapids, MI, David K. Schmitt, Katten, Muchin & Zavis, Chicago, IL, John M. Sheran, Leonard, Street and Deinhard, Minneapolis, MN, for A.O. Smith Corporation, A.O. Smith Harvestore Products, Inc.

## OPINION

BENJAMIN F. GIBSON, District Judge.

Defendants A.O. Smith Corporation ("Smith") and A.O. Smith HARVESTORE Products, Inc. ("Harvestore"), move for summary judgment on the second amended complaint of plaintiffs Valleyside Dairy Farms, Inc., E. Robert Grams and Karen E. Grams (the "plaintiffs," "Valleyside Dairy," and the "Grams"). Plaintiffs allege fraud, conspiracy to commit fraud, and violation of the Racketeering Influenced Corrupt Organization Act ("RICO"), Title 18 United States Code Sections 1961 *et seq.*, relating to defendants' representations as to the quality, characteristics, and performance of Harvestore silos. Defendants argue that plaintiffs' fraud claims are barred by the economic loss doctrine and the statute of limitations, and that plaintiffs cannot prove proximate causation of damages for their fraud claims by clear and convincing evidence. Defendants also argue that RICO's four year statute of limitations bars plaintiffs' RICO claim and that plaintiffs also cannot satisfy the proximate causation requirement of their RICO claim. After review of the motion, briefing, and record, the Court determines that the economic loss doctrine bars plaintiffs' fraud claim but that genuine issue of material fact remain as to the limitation and proximate causation issues of plaintiffs' RICO claim.

## I.

The Grams are dairy farmers who bought Valleyside Dairy in 1967 and used Harvestore brand silos to store feed for their herd. Harvestore is the manufacturer of Harvestore silos and Smith is Harvestore's parent company. Smith and Harvestore marketed Harvestore feed storage systems as "oxygen-limiting," "oxygen-free," or "air-tight." Theoretically this feature reduced microorganic aerobic degradation of the ensiled feed. However, internal company memoranda indicate that Harvestore silos were not "air tight." Nevertheless, defendants continued marketing Harvestore silos as air-tight feed storage systems through a comprehensive national marketing system consisting of brochures, films, farm tours, farm visits, "Harvestore" dinners, and other sales techniques.

In 1967, when plaintiffs purchased Valleyside Dairy, it had one Harvestore brand silo for storage of alfalfa forage ("haylage"). The Grams allege that in reliance on the representations of Harvestore and Smith, they bought five more Harvestore silos; two in 1970, one each in 1974, 1977, and 1979. They also leased a seventh Harvestore silo in 1979. The Grams bought or leased the Harvestore

silos from Michigan Glass Lined Storage, Inc., which is not a defendant in this action. In 1986 or 1987 plaintiffs quit using the Harvestore silos for storage of haylage. Plaintiffs continued to use one or two of the silos to store high moisture corn until 1993.

Plaintiffs did not file this action until their attorney who represented them in a stray voltage action in state court, advised them that their Harvestore silos did not "work right." Until advised otherwise, defendants contend that the Grams' experience with the Harvestore silos was consistent with their expectations. Plaintiffs contend, however, that, according to defendants' promotional literature, oxygen damage is difficult to detect, especially when silos are unloaded before the more blatant signs of deterioration appear. Nevertheless, expert analysis of the ensiled feed and production records of Valleyside Dairy allegedly reveal oxygen damage to the feed and reflect depressed dairy production.

## II.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). In ruling on a motion for summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

## III. FRAUD CLAIMS

Defendants argue that plaintiffs' fraud claims are barred by the economic loss doctrine, the statute of limitations, and that plaintiffs cannot prove proximate causation of damages by clear and convincing evidence.

■ The economic loss doctrine "bars tort recovery and limits remedies to those available under the Uniform Commercial Code where a claim for damages arises out of the commercial sale of goods and losses incurred are purely economic." *Neibarger v. Universal Coops.*, 439 Mich. 512, 515, 486 N.W.2d 612, 613 (1992). The economic loss doctrine distinguishes between the different purposes of contract law and tort law, as the *Neibarger* court explained:

> The economic loss doctrine, simply stated, provides that " '[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses.' " This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts.

*Neibarger*, 486 N.W.2d at 615 (citations omitted). *Neibarger*, 486 N.W.2d at 614–16.

After surveying previous case law, the *Neibarger* court concluded:

> We are convinced that the reasoning of those courts which have adopted the economic loss doctrine compels a similar conclusion on our part. In the absence of legislative direction, we believe such a rule is required to guide trial courts facing cases such as those before us which lie at the intersection of tort and contract. Accordingly, we hold that where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC, including its statute of limitations. A contrary holding would not only serve to blur the distinction between tort and contract, but would undermine the purpose of the Legislature in adopting the UCC.... In that event, Article 2 would be rendered meaningless and, as stated by the Supreme Court in *East River [Steamship Corp. v. Transamerica*

*Delaval,* 476 U.S. 858, 866 [106 S.Ct. 2295, at 2300, 90 L.Ed.2d 865] (1986) ], "contract law would drown in a sea of tort."
*Neibarger,* 486 N.W.2d at 616.

In applying the economic loss doctrine, the *Neibarger* court cited *Agristor Leasing v. Spindler,* 656 F.Supp. 653, 654 (D.S.D.1987), and said:

> [T]he [*Agristor* ] court found that damage to a dairy herd constituted economic loss rather than property damage where the purchasers of a feed storage system alleged that it was negligently designed and manufactured. The plaintiffs claimed that the defective product spoiled the feed it contained and resulted in "their dairy herd suffering medically and reproductively, milk production dropping and, ultimately, lost income." Finding that the plaintiffs were merely seeking "to recover the resulting losses to their dairy farm due to the Harvestore silo failing to perform as expected," . . . the court characterized the injuries as economic loss and denied recovery in tort. We agree.

*Neibarger,* 486 N.W.2d at 619–620.

■ The *Neibarger* court also recognized the broad scope of the economic loss doctrine as encompassing damage to property other than the subject product:

> Damage to property, where it is the result of a commercial transaction otherwise within the ambit of the UCC, should not preclude application of the economic loss doctrine where such property damage necessarily results from the delivery of a product of poor quality. . . . In *Hapka v. Paquin Farms,* 458 N.W.2d 683, 688 (Minn.1990), the Supreme Court of Minnesota opined that "[t]he steady stream of litigation attempting to qualify for the exceptional treatment of damage to other property has convinced us that the exception represents a retreat to the common law in derogation of the essence of the Uniform Commercial Code: a complete and independent statutory scheme enacted for the governance of all commercial transactions." We agree with this analysis, noting, as did the *Hapka* court, that the UCC provides remedies sufficient to compensate the buyer of a defective product for direct,

incidental, and consequential losses, including property damage.

*Neibarger,* 486 N.W.2d at 620. Only damage to other property caused by the defective product in a manner beyond the contractual contemplation of the parties are excepted from "economic loss." *See also Great American Ins. Co. v. Paty's Inc.,* 154 Mich.App. 634, 397 N.W.2d 853 (1986); *Sullivan Industries, Inc. v. Double Seal Glass Co.,* 192 Mich.App. 333, 480 N.W.2d 623 (1991).

■ The economic loss doctrine also is not limited to parties in privity. *Neibarger,* 486 N.W.2d at 613; *Sullivan Industries, Inc. v. Double Seal Glass Co.,* 192 Mich.App. 333, 480 N.W.2d 623 (1991); *Freeman v. DEC Int'l. Inc.,* 212 Mich.App. 34, 536 N.W.2d 815 (1995).

■ The economic loss doctrine also bars the tort claims of an unsatisfied user of a product that arises in a commercial setting. In *Bailey Farms v. NOR–AM Chemical Co.,* 27 F.3d 188 (6th Cir.1994), a farmer sued a fumigant manufacturer, alleging that misinformation as to proper use of the fumigant destroyed his watermelon crop. The *Bailey* court reasoned:

> [P]laintiff argues that its claims fall within tort policies, not contract principles, such that the economic loss doctrine should not apply. We disagree. Just as in *Neibarger,* the damages in this case were purely economic and consequential, and there was no accident or physical injury. Furthermore, plaintiff has a remedy for allegedly negligent representations by the seller pursuant to the warranty provisions of the UCC. See Mich.Comp.Laws Ann. § 440.2313 (West 1967 & Supp.1993) (express warranties); and Mich.Comp.Laws Ann. §§ 440.2314, 440.2315 (West 1967) (implied warranties of merchantability and/or fitness for a particular purpose).

*Bailey,* 27 F.3d at 192. In *Frey Dairy v. A.O. Smith Harvestore Products, Inc.,* 680 F.Supp. 253 (E.D.Mich.1988), a dairy farm sued the seller and manufacturer of Harvestore silos for failure to operate properly resulting in reduced milk production and lost profits. The court granted summary judgment for defendants on plaintiffs' warranty

claims as barred by the statute of limitations and on plaintiffs' tort claims as barred by the economic loss doctrine. The *Frey* court reasoned:

> Whether the complaint is cast in terms of strict liability in tort or negligence should make no difference. The doctrine has been expanded to apply also to a buyer-manufacturer situation, where no contractual privity technically exists, on · the ground that the economic loss doctrine, if applicable, bars all tort remedies. *Consumers Power v. Mississippi Valley Structural Steel*, 636 F.Supp. 1100, 1106–07 (E.D.Mich.1986). See also, *Sylla v. Massey–Ferguson Inc.*, 660 F.Supp. 1044 and 595 F.Supp. 590 (E.D.Mich.1984) ["when a plaintiff seeks to impose liability for economic losses only, tort law concerns with product safety no longer apply, and commercial law concerns with economic expectations must govern."]; *A.C. Hoyle Co. v. Sperry Rand Corp.*, 128 Mich.App. 557, 340 N.W.2d 326 (1983); *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). Accordingly, plaintiff has failed to state tort claims on which relief can be granted as a matter of law.

*Frey*, 680 F.Supp. at 255–56.

■ Plaintiffs insist that their claim is for fraud, not for negligence, products liability claim, or breach of contract. Plaintiffs maintain that they used the Harvestore silos in reliance upon defendants' intentionally false and material representations to their detriment. Relying on *Huron Tool and Engineering Company v. Precision Consulting Servs.*, 209 Mich.App. 365, 532 N.W.2d 541 (1995), plaintiffs contend that fraud in the inducement is an exception to the economic loss doctrine.

In *Huron Tool*, the Michigan Court of Appeals recognized fraud as an exception to the economic loss doctrine, stating:

> Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely—which normally would constitute grounds for invoking the economic loss doctrine—but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior. In contrast, where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the other party is still free to negotiate warranty and other terms to account for possible defects in the goods.

*Huron Tool*, 209 Mich.App. at 372–73. The court specifically held:

> We hold that plaintiff may only pursue a claim for fraud in the inducement extraneous to the alleged breach of contract.

> Our holding heeds the Supreme Court's admonition to avoid confusing contract and tort law. *Neibarger, supra* at 529, 486 N.W.2d 612. The danger of allowing contract law to " 'drown in a sea of tort' " exists only where fraud and breach of contract claims are factually indistinguishable. *Id.* at 528, 486 N.W.2d 612. However, a claim of fraud in the inducement, by definition, redresses misrepresentations that induce the buyer to enter into a contract *but that do not in themselves constitute contract or warranty terms subsequently breached by the seller.* (emphasis added)

*Huron Tool*, 209 Mich.App. at 374–75.

The critical issue is whether a plaintiff's fraud claim is viable apart from any of the plaintiff's contractual claims. In *Huron Tool*, the court found that the plaintiff's fraud claim was not viable apart from the plaintiff's contract claims, stating:

> The fraudulent representations alleged by plaintiff concern the quality and characteristics of the software system sold by defendants. These representations are indistinguishable from the terms of the contract and warranty that plaintiff alleges were breached. Plaintiff fails to allege any wrongdoing by defendants independent of defendants' breach of contract and warranty. Because plaintiff's allegations of fraud are not extraneous to the contractual dispute, plaintiff is restricted to its contractual remedies under the UCC.

*Huron Tool*, 209 Mich.App. at 375.

Plaintiffs contend that their claim clearly comes under the *Huron Tool* exception, and that their "damage flows not from the contract but from the use of the Harvestore

silos in reliance upon intentionally false statements." Plaintiff's Brief at 27. They maintain that defendants intentionally misrepresented the oxygen-limiting characteristic features of the Harvestore silos in marketing them and that they reasonably relied on the defendants' misrepresentations to their detriment, not from any breach of contract (because no such contract existed), but by using Harvestore silos. Moreover, plaintiffs argue that their fraud claim arises from a breach of "the duty to refrain from intentional deception," *id.*, at 30, which is "separate and distinct" from a breach of contract. *See Bailey*, 27 F.3d at 192; *Brock v. Consolidated Biomedical Laboratories*, 817 F.2d 24, 25 (6th Cir.1987); *Merchants Pub. Co. v. Maruka Mach. Corp.*, 800 F.Supp. 1490, 1493 (W.D.Mich.1992) (under Michigan law tort action requires a breach of a duty separate and distinct from a breach of contract).

The Court is not persuaded by such arguments. In this case, plaintiffs' fraud claims are within the economic loss doctrine. Plaintiffs' fraud claims arise in the commercial context of a dairy farm in which economic interests are central. Although plaintiffs claim non-economic loss for humiliation, outrage, indignity, emotional distress and mental anguish, plaintiffs' alleged injuries do not appear to involve accidental or personal injury.

Moreover, plaintiffs' claim does not come within the *Huron Tool* exception for fraud in the inducement. The allegedly fraudulent representations that induced the plaintiffs to use Harvestore silos "concern the quality and characteristics" of the Harvestore silos as being air-tight and, therefore, more beneficial in preserving ensiled feed. The Harvestore silos allegedly frustrated plaintiffs' economic expectations because they were not air-tight. If the Harvestore silos had performed as represented, there would be no alleged aerobic degradation of the ensiled feed and no injury in the form of lower profits and higher operating costs for the dairy operation. Plaintiffs' fraud claims are inextricably connected to the "quality or character" of the silos about which plaintiffs could have negotiated a warranty and other terms to account for possible defects in the goods or nonperformance. Clearly, the defendants representations were not extraneous to the quality and characteristics of the silos. Further, plaintiffs' allegations are essentially indistinguishable from a contract claim that they could have brought against their seller, had they negotiated a warranty of quality and performance. Accordingly, the economic loss doctrine applies and bars plaintiffs' fraud claims.

### IV.

Defendants also move for summary judgment on plaintiffs' RICO claim. They argue that it is barred by RICO's four year statute of limitations and that plaintiffs cannot satisfy the proximate causation standard for RICO damages.

In *Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Supreme Court held that the statute of limitations for RICO claims is four years, but did not establish an accrual standard. In *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233 (6th Cir. 1992), the Sixth Circuit applied the accrual rule of *Bivens Gardens Office Bldg. v. Barnett Bank*, 906 F.2d 1546, 1554–55 (11th Cir. 1990), *cert. denied*, 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991), which provides: "[A] civil RICO cause of action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern." *Agristor*, 967 F.2d at 241. *See also Caproni v. Prudential Sec.*, 15 F.3d 614 (6th Cir.1994); *Hofstetter v. Fletcher*, 905 F.2d 897, 904 (6th Cir.1988).

Plaintiffs' allegations of damage consist of a reduction in milk production, increase in the health problems of the dairy herd, spoilage of feed and damage to feed, among others. Defendants argue that plaintiffs knew or should have known the facts on which they based their RICO claim during the 27 years while they were using the Harvestore silos, because the facts were in plaintiffs' possession. Plaintiffs argue that the information that would have allowed plaintiffs to discover the defendants' fraud was only available to defendants. Specifical-

ly, plaintiffs contend that after defendants learned that the Harvestore silos were not air-tight they did not disclose this information but kept it confidential by minimizing internal written communication. They allegedly even attempted to cloak the information with a mantle of legal privilege by directing internal communications dealing with the subject to the defendants' law department with copies to the relevant corporate department.

Review of the current record before the Court indicates a genuine issue of material fact as to when plaintiffs should have discovered, both the existence and source of their injury and that the injury was part of a pattern.[1]

■ RICO claims must satisfy not only factual or "but for" causation, but also "proximate" causation. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 264–70, 112 S.Ct. 1311, 1316–1318, 117 L.Ed.2d 532 (1992). Proximate causation requires some direct relation between the claimed injury and the asserted conduct. In *Holmes,* the Court stated that:

> Here we use "proximate cause" to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts. At bottom, the notion of proximate cause reflects "ideas of what justice demands, or of what is administratively possible and convenient." W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts* 41, p. 264 (5th ed. 1984). Accordingly, among the many shapes this concept took at common law, see *Associated General Contractors, [v. California State Council of Carpenters]*, 459 U.S. [519] at 532–533 [103 S.Ct. 897 at 905–906, 74 L.Ed.2d 723 (1983) ], was a demand for some direct relation between the injury asserted and the injurious conduct alleged. Thus, a plaintiff who complained of harm

flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover. *See, e.g.,* 1 J. Sutherland, *Law of Damages* 55–56 (1882).

In *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386 (11th Cir.), *modified,* 30 F.3d 1347 (11th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995), the Eleventh Circuit commented on proximate cause in a RICO context stating:

> A proximate cause is not, however, the same thing as a sole cause. Instead, a factor is a proximate cause if it is a "substantial factor in the sequence of responsible causation." *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23–24 (2d Cir.1990).

*Cox,* 17 F.3d at 1399.

■ Relying on *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 769 (2nd Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995), defendants contend that plaintiffs cannot show a direct relationship where the alleged fraud is indisputably only one of a number of factors that resulted in plaintiffs' injury. In *First Nationwide,* plaintiff alleged that defendant misrepresented the value of real estate that plaintiff purchased resulting in the loss of value and profitability. The court found that plaintiff could not allege a factual basis, that if proven, could support its claim with sufficient particularity in view of all of the many factors that influenced the general real estate market.

Review of the current record before the Court indicates that a genuine issue of material fact exists as to the direct relation between defendants' alleged RICO activity and plaintiffs' asserted loss.[2]

---

**1.** This finding of a genuine issue of material fact is based on the Court's review of the current record before it. As such, the period of limitations remains an open issue to which proofs must be directed at trial and remains subject to the Court's continuing review under Federal Rule of Civil Procedure 50.

**2.** This finding of a genuine issue of material fact is based on the Court's review of the current record before it. As such, proximate causation remains an open issue to which proofs must be directed at trial and remains subject to the Court's continuing review under Federal Rule of Civil Procedure 50.

## V.

In summary and conclusion, the Court finds that as to plaintiffs' fraud claims the economic loss doctrine bars plaintiffs' fraud claims and that the *Huron Tool* exception does not apply. Further, the Court finds that as to plaintiffs' RICO claim genuine issues of material fact exist as to whether the statute of limitations bars the RICO claim and whether plaintiffs can satisfy the proximate cause requirement.