694 So.2d 74 (1997)
HOTELS OF KEY LARGO, INC., a Florida corporation, d/b/a Port Largo Marina and Resort, and Casa Magna Investments, Inc., a Florida corporation, d/b/a Bayside Key West Hotel, Appellants,
v.
RHI HOTELS, INC., f/k/a Lower Colony Hotels 7 Resorts, Inc., Tribunal No. 94-205 a Delaware corporation, and Colony Acquisition Corp., n/k/a Colony Hotels and Resorts Co., an affiliate of Interstate Hotels Corporation, Appellees.
No. 96-328.
District Court of Appeal of Florida, Third District.
April 16, 1997.
Rehearing Denied June 18, 1997.
*75 Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, and Stephanie Arma Kraft, Fort Lauderdale, for appellants.
Fowler, White, Burnett, Hurley, Banick & Strickroot, and Sara Soto, for Appellee RHI Hotels, Inc.
Katz, Barron, Squitero, Faust & Berman, and Albert J. Xiques, and David R. Cassetty, for Appellee Colony Acquistion Corp.
Before LEVY, GERSTEN and GREEN, JJ.
GERSTEN, Judge.
Appellants, Hotels of Key Largo, Inc. and Casa Magna Investments, Inc. (hereafter collectively referred to as "plaintiffs"), appeal the dismissal of their complaint seeking rescission of licensing agreements based upon alleged fraudulent misrepresentations. We affirm finding the complaint fails to state a cause of action, and specifically that the plaintiffs' fraudulent inducement claim is barred by the economic loss doctrine.
The plaintiffs filed suit against appellees, RHI Hotels, Inc., and Colony Acquisition Corp. (hereafter collectively referred to as "defendants"), after the parties entered into a series of licensing agreements relating to hotel operation. Basically, the parties agreed that upon payment of the licensing fee, the plaintiffs' hotels would be converted to Colony Hotels becoming part of the Radisson Hotels family and participating in a worldwide reservation system.
The licensing agreements, which were admittedly the product of arm's length negotiations, contained detailed provisions outlining the parties' rights and obligations, and included an integration clause.[1] Specifically, paragraph 6 of the agreement listed defendant RHI's duties as: (a) to "consult with [plaintiffs] from time to time"; (b) to inspect the plaintiffs' properties for certain purposes; (c) to "furnish the [System]" to plaintiffs, on the same basis as it is from time to time furnished to other licensees; (d) to include plaintiffs' properties in its directory and other promotional material, in accordance with standard policy with respect to System resorts; (e) to include plaintiffs' properties in certain directories, advertising and promotions; (f) to solicit, where applicable, business for plaintiffs' properties through RHI's national sales offices; (g) to assist plaintiffs' grand opening ceremony if requested; (h) to train plaintiffs' general and assistant managers in System procedures; (i) to offer periodic general meetings and training classes in specialized fields; (j) to issue policy operating manuals; and, (k) to provide technical consulting on the same basis as provided other licensees if requested. Addenda to the license agreements restricted RHI's right to operate competing resorts within a certain radius.[2]
*76 According to the plaintiffs, the defendants did not perform as promised and the plaintiffs lost over $10,000 in the first five months after signing the licensing agreement. The plaintiffs then filed suit alleging they were fraudulently induced into entering the licensing agreements. The complaint sought rescission and further alleged, based upon the fraudulent misrepresentations, that the defendants breached the implied duty of good faith and fair dealing, and violated the Florida Franchise Act.
All of the plaintiffs' claims were essentially premised on allegations that the defendants made three unfulfilled promises. First, according to the plaintiffs, they were promised they would become part of the Radisson Hotels family, would benefit from the family's experience and management, and would participate in a worldwide reservation system listed with more than 4,500 travel agents. Second, the plaintiffs contend their hotels were promised to be the sole beneficiaries of the reservation system in the Florida Keys. Third, the plaintiffs allege they were promised more than 40% of their room reservations would be derived from the reservation system and travel agents.
In response to the plaintiffs' complaint, the defendants filed a motion to dismiss contending that the fraud claims were either barred by the economic loss rule or failed to state a cause of action, and that the remaining claims also failed to state a cause of action. The trial court granted the motion to dismiss with prejudice finding that the economic loss rule and the parole evidence rule barred the fraud claims. The court further found that the breach of implied duty of good faith and fair dealing claims were insufficient and barred by the parole evidence rule. The remaining claims for rescission, violation of the Florida Franchise Act and declaratory relief were also found insufficient to state a cause of action.
We agree with the trial court in all respects. The terms of the contract are clear and unambiguous, and the plaintiffs' complaint fails to state a cause of action. See Capital Bank v. MVB, Inc., 644 So.2d 515 (Fla. 3d DCA 1994), rev. denied, 654 So.2d 918 (Fla.1995), and rev. denied, 659 So.2d 1086 (Fla.1995). See also Englezios v. Batmasian, 593 So.2d 1077, 1078 (Fla. 4th DCA 1992)("A party may not recover in fraud for an alleged oral misrepresentation which is adequately dealt with in a later written contract."); Federal Deposit Ins. Corp. v. High Tech Medical Systems, Inc., 574 So.2d 1121 (Fla. 4th DCA 1991)(reliance on oral representations in light of disclaimer in written contract was not justifiable and thus there can be no actionable fraud). We write further because the issue of the scope of the economic loss doctrine as it relates to allegations of fraud requires additional explanation.
In HTP, Ltd. v. Lineas Aereas Costarricenses S.A., 661 So.2d 1221 (Fla. 3d DCA 1995), this Court held that a claim for fraudulent inducement is an independent tort and thus not barred by the economic loss rule. See Wassall v. Payne, 682 So.2d 678 (Fla. 1st DCA 1996); Jarmco, Inc. v. Polygard, Inc., 668 So.2d 300 (Fla. 4th DCA), rev. granted, 678 So.2d 339 (Fla.1996), and decision approved, 684 So.2d 732 (Fla.1996); TGI Dev., Inc. v. CV Reit, Inc., 665 So.2d 366 (Fla. 4th DCA), rev. granted, 684 So.2d 1350 (Fla. 1996), and decision approved 689 So.2d 255, 22 Fla. L. Weekly S22 (Fla., Dec. 19, 1996). The Supreme Court of Florida subsequently approved this decision noting that the "economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action." HTP, Ltd. v. Lineas Aereas Costarricenses, 685 So.2d 1238, 1239 (Fla.1996).
However, the supreme court further recognized that certain fraudulent inducement claims are barred by the economic loss rule. Citing to the case of Huron Tool and Eng'g Co. v. Precision Consulting Services, Inc., 209 Mich.App. 365, 532 N.W.2d 541 (1995)[3], *77 the supreme court agreed with the analysis and explanation in Huron that:
Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freelywhich normally would constitute grounds for invoking the economic loss doctrinebut where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior....
The distinction between fraud in the inducement and other kinds of fraud is the same as the distinction drawn by a New Jersey federal district court between fraud extraneous to the contract and fraud interwoven with the breach of contract. With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort.
HTP, Ltd. v. Lineas Aereas Costarricenses, 685 So.2d at 1240.
Applying common sense to the supreme court's analysis, we decline to adopt the defendants' position that one can always avoid operation of the economic loss doctrine by merely pleading fraud in the inducement. A critical distinction must be made where the alleged fraudulent misrepresentations are inseparably embodied in the parties' subsequent agreement. This would seem especially so where the parties have specifically agreed in an integration clause that their written contract "supersedes all prior agreements or understandings." See Tevini v. Roscioli Yacht Sales, Inc., 597 So.2d 913 (Fla. 4th DCA 1992), rev. denied, 613 So.2d 9 (Fla.1993).
As noted in Huron, 532 N.W.2d at 544 (citing Williams Elec. Co., Inc. v. Honeywell, Inc., 772 F.Supp. 1225, 1237-38 (N.D.Fla. 1991)):
The distinction is critical, for the essence of the "economic loss" rule is that contract law and tort law are separate and distinct, and the courts should maintain that separation in the allowable remedies. There is a danger that tort remedies could simply engulf the contractual remedies and thereby undermine the reliability of commercial transactions. Once the contract has been made, the parties should be governed by it.
It makes sense that a truly independent cause of action for fraudulent misrepresentation, where the ability of one party to negotiate fair terms is undermined by the other's fraudulent behavior, is not barred by the economic loss rule. However, where the only alleged misrepresentation concerns the heart of the parties' agreement, simply applying the label of "fraudulent inducement" to a cause of action will not suffice to subvert the sound policy rationales underlying the economic loss doctrine.
As noted in Puff `N Stuff of Winter Park, Inc. v. Bell, 683 So.2d 1176, 1179-80 (Fla. 5th DCA 1996)(Harris, J. concurring specially):
[A]lmost any contract claim can be framed as a fraud in the inducement action.... Therefore it seems more appropriate, if the economic loss rule has any real substance, to look not at the label placed on the claim by the attorney but rather on the substance of the claim.
....
Fraud in the inducement is an independent tort but the fraudulent misrepresentation underlying the action may or may not be independent of the contract. If we are to say, as some urge, that because fraud in the inducement is an "independent tort" (as opposed to independent of the contract) it is never barred by the economic loss rule, then the matter is resolved by a "bright line" test. But that ignores the distinction set forth in Huron ....
.... Would it not be more in keeping at least with the spirit of the original economic loss cases to consider the relationship between the inducing representation *78 and the essential requirements, expressed or implied, of the contract agreed to by the parties?
We wholeheartedly agree with Judge Harris's insightful analysis. See also Williams v. Peak Resorts International, Inc., 676 So.2d 513, 518 (Fla. 5th DCA 1996) (Harris, J., dissenting).
Turning to the facts here, the plaintiffs claim that contrary to the defendant's pre-contract representations, the plaintiffs were not listed with the system fast enough, did not receive enough reservations, and did not benefit from the appellee's management experience. Notwithstanding the fact that the oral representations on which the plaintiffs claim to have relied are contradicted by the integration clause of the license agreement, this type of fraud claim is not independent of the contract and thus the economic loss doctrine applies. See Benedict Feeding Co., Inc. v. Priest, No. 96-1836-Civ-T-17, 1997 WL 75605 (M.D.Florida, Feb. 4, 1997); Lake & Piepkow Farms v. Purina Mills, Inc., 955 F.Supp. 791 (W.D.Mich.1997); Valleyside Dairy Farms, Inc. v. A.O. Smith Corp., 944 F.Supp. 612 (W.D.Mich.1995).[4]
Misrepresentations relating to the breaching party's performance of a contract do not give rise to an independent cause of action in tort, because such misrepresentations are interwoven and indistinct from the heart of the contractual agreement. Therefore, we clarify that where the alleged fraudulent misrepresentation is inseparable from the essence of the parties' agreement, the economic loss rule applies and the parties are limited to pursuing their rights in contract. Accordingly, the order below is affirmed in all respects.
Affirmed.
NOTES
[1] The integration clause contained at paragraph 16 delineated that the written agreement superseded all prior understandings:

This License Agreement, and any attachment referred to in Paragraphs 3 and 4 hereof and any Addendum or Amendment hereto collectively constitute the entire agreement between the parties and supersede all prior agreements or understandings .... [N]o change in this Agreement will be valid unless signed in writing by both parties.
[2] Paragraph 3 of the "Second Addenda" specifically provided that: "RHI shall not operate or authorize others to operate any Colony Properties within an area described by a circle having a radius of twenty-five (25) miles measured from the resort."
[3] In Huron Tool, the Michigan Court of Appeals upheld dismissal of the plaintiff's fraud claim finding the claim barred by the economic loss rule. The plaintiff had contracted to purchase a computer software system and sued for breach of contract and fraudulent misrepresentation asserting alleged defects in the software system. The court held that where the alleged misrepresentations concerned the quality and characteristics of the goods sold, they were not extraneous to the contract and the economic loss doctrine would still apply. Huron Tool, 532 N.W.2d at 541. The court noted that "where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the other party is still free to negotiate warranty and other terms to account for possible defects in the goods." Huron Tool, 532 N.W.2d at 545.
[4] In Valleyside, 944 F.Supp. at 617, the court found the plaintiffs' fraud claims were within the economic loss doctrine noting:

Clearly, the defendants representations were not extraneous to the quality and characteristics of the [the goods sold]. Further, plaintiffs' allegations are essentially indistinguishable from a contract claim they could have brought against the seller, had they negotiated a warranty of quality and performance. Accordingly, the economic loss doctrine applies and bars plaintiffs' fraud claims.