972 So.2d 265 (2008)
William JACQUES, Appellant,
v.
The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Appellee.
No. 4D07-731.
District Court of Appeal of Florida, Fourth District.
January 9, 2008.
Fred O. Goldberg of Berger Singerman, Miami, for appellant.
Nancy Ciampa and Leonor M. Lagomasino of Carlton Fields, P.A., Miami, for appellee.
*266 STONE, J.
In this action by an insured, the trial court entered an order dismissing counts for fraud in the inducement and negligent misrepresentation, applying the economic loss rule, and entered summary judgment in favor of the insuror on counts for breach of contract and declaratory judgment. We affirm.
Jacques' employer provided $4,299 in disability insurance for which Jacques paid a partial premium. The employer also arranged for employees to acquire an additional supplemental disability policy, through Equitable, in the amount of $2,000 per month. Jacques applied for this supplemental policy. The policy schedule stated that Jacques' monthly premium was $66.82 and that, beginning on the 181st day of disability, the policy would pay him the "maximum monthly amount" of $2,000 until age 65. Paragraph 10.1 of the contract states as follows:
ENTIRE CONTRACT; CHANGES
This Policy (with the application and attached papers) is the entire contract between You and Us. No change in this Policy will be effective until approved by a Company officer. This approval must be noted on or attached to this Policy. No agent may change this Policy or waive any of its provisions.
The company filled out the application for the supplemental policy before offering the application to the employees. Where Jacques was asked to describe all disability coverage in force at the time, the application stated that Jacques had an existing Paul Revere policy in the amount of $4,299 per month until age 65. Where it asked "Will coverage be Replaced/Changed or Madeover," there was an "X" in the box marked "No" and the box asking for the date of discontinuance was left blank. Jacques did, however, place an asterisk next to the $4,299. On the same page, the application stated that the "coverage being requested" was "Base" coverage in the amount of $2,000 per month. Jacques made no special notations on this part of the application form.
On the next page, Jacques placed a second asterisk at the end of the following sentence in the agreement section of the application:
2) I will permanently discontinue all policies shown to be discontinued in answer to question 6 on or before the dates indicated. If not, benefits under any policy issued on this application may be reduced by the amount payable under such existing policies.
At the end of the application, Jacques inserted a third asterisk with the following note: "$4,299/mo will be eliminated and will be added to this policy."
Jacques asserts that the asterisked modifications he made to the application served to increase the amount of policy coverage to $6,299 per month. Jacques' complaint also charges that prior to his completing the application, agents of Equitable had told him that
if coverage under the Paul Revere policy was no longer available to him, the coverage under the policy . . . would provide him with a maximum benefit of $6,299.00. Such agents of the Defendant instructed the Plaintiff to modify the application to reflect this and the Plaintiff acted accordingly by indicating on the application that the $4,299.00 maximum monthly benefit available under the Paul Revere policy "will not be eliminated and will be added to this policy."
Jacques asserted that he believed Equitable would issue him the subject policy of insurance as represented by the defendant's *267 agent(s) simply by his making the asterisked comments on the application.
Jacques testified in deposition that he had been aware that his job would terminate in about two years. At the time he acquired the policy, he had a group policy that paid about 60% of his salary, or $4,000. He did not know what premium he was paying for that coverage. The new $2,000 policy offer came to him as a special deal because he was an employee of an Equitable affiliate. Jacques agreed that he understood that a premium for $6,299 in insurance would be more than the premium provided for $2,000 in insurance. When he left his job, he continued paying for the $2,000 in coverage, but believed that he would have a total of $6,299 in coverage. He never even thought about how the insurer would be compensated for the additional $4,299.
The $2,000 policy was issued in January 1996. Jacques left his job two years earlier than expected, in November 1996, and at some point, the pre-existing Paul Revere $4,299 policy ceased to provide coverage. He applied for Equitable benefits in 2001.
Jacques argues that under the terms of his asterisked additions to the policy/application, his coverage automatically increased when he left his job, notwithstanding a lack of provision for an increased premium or additional payment. Equitable points out that the premium issue is significant because the first page of the policy states that the policy was non-cancellable until age 65 and that the premium could not be changed. Additionally, the application and policy unequivocally stated that the coverage was $2,000, and the policy schedule page stated that there was no modification of the pre-existing Paul Revere coverage.
We conclude that the record reflects not only that the applicant was purchasing a $2,000 policy, but that Jacques' asterisks and notation made it clear that he was not discontinuing his Paul Revere policy. Nowhere in the application does it say that the new policy will increase when the old policy ceased to provide coverage. Jacques admits that he had no idea how such a transformation was supposed to occur and had never discussed the details of premiums.
The trial court did not err in concluding that there was no ambiguity created by the asterisked application. The court asked Jacques why he did not ask Equitable to change the policy when his group policy ceased to provide coverage. Jacques initially responded that the premium for the $6,299 would have been the same as the premium for the $2,000. However, he then conceded that, at the time he knew he was applying for the policy, he was applying for $2,000 in benefits.
With respect to Jacques' tort claims, we conclude that the economic loss rule precludes recovery. We have considered Martin v. Principal Mutual Life Insurance Company, 557 So.2d 128 (Fla. 3d DCA 1990), and deem it distinguishable because in that case, the terms of the policy differed from the representations of the agent. See id. (holding that the terms of an insurance policy do not preclude an action against the insurer or its agent where the agent misrepresents the coverage of the insurance contract and the insured reasonably relies on the misrepresentation to his detriment).
Here, however, Jacques simply asserts he was told that if he wanted to seek increased coverage, he should make the request on the application and that he followed that instruction. The alleged advice of the agent was incorporated into the asterisks in the contract application. It is not suggested that the agent indicated that *268 Jacques would receive an automatic increase in coverage or that no additional notice and premium payment would be required for an increase in coverage at a later date.
In Straub Capital Corporation v. L. Frank Chopin, P.A., 724 So.2d 577 (Fla. 4th DCA 1999), tenants sued a landlord, alleging fraud in the inducement and negligent misrepresentation. In reversing an award to tenants, we held that the economic loss rule barred recovery because the misrepresentations were directly related to the landlord's performance under the lease.
There, we recognized that a party may not avoid the economic loss rule simply by entitling a claim a "fraudulent inducement" claim. Id. (citing Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So.2d 74, 78 (Fla. 3d DCA 1997)). In RHI Hotels, the Third District summarized:
Misrepresentations relating to the breaching party's performance of a contract do not give rise to an independent cause of action in tort, because such misrepresentations are interwoven and indistinct from the heart of the contractual agreement. Therefore, we clarify that where the alleged fraudulent misrepresentation is inseparable from the essence of the parties' agreement, the economic loss rule applies and the parties are limited to pursuing their rights in contract.
Here, as in Straub, the subject representations were directly related to the breaching party's performance and there is no view of the claim or evidence indicating that the defendant intended, at the outset, to fail or refuse to comply with the agreement terms.
The trial court also properly entered summary judgment on the contract claims. The additions to the contract did not create an ambiguity as to the coverage. They can be read either as a statement that Jacques did not intend to discontinue his existing Paul Revere coverage, or they can be read as a statement that, at some future date, he intended to increase his coverage by the amount of his existing coverage. The trial court appeared to rely on the latter interpretation in its reasoning. Not even Jacques claims that he was asking Equitable to write a policy for $6,299 per month at the time of the application. To the contrary, he expressly wrote that he was not eliminating his existing $4,299/ month Paul Revere policy, and his use of the future tense phrase "will be added" indicates the intent to take a future action regarding additional coverage.
It is undisputed that Jacques knew he was getting a $2,000 per month policy for the policy premium. Although the agent told him about adding the asterisks and the language to the application, Jacques did not know how or when his existing policy was supposed to convert to his new policy or what the premium was supposed to be because "the conversation never went that far." He had never even thought about how he would pay for the additional $4,299 in insurance after he left his job. He just kept paying the same premium he had paid for the $2,000.
Therefore, the judgment is affirmed.
MAY, J. and TUTER, JACK BEN, JR., Associate Judge, concur.