**DANTZLER LUMBER & EXPORT CO., Plaintiff,**

v.

**BULLINGTON LUMBER CO., INC., Defendant.**

**No. 96–1134–CIV–T–17C.**

United States District Court, M.D. Florida, Tampa Division.

June 26, 1997.

Thomas Eugene Fotopulos, Fotopulos & Spridgeon, Tampa, FL, for Dantzler Lumber & Export Co.

Edward O. Savitz, Alicia Jean Schumacher, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, for Bullington Lumber Co., Inc.

## ORDER ADOPTING REPORT AND RECOMMENDATION

KOVACHEVICH, Chief Judge.

This matter is before the Court on the Report and Recommendation entered by Magistrate Judge Elizabeth A. Jenkins, on January 21, 1997 (Docket No. 43); Plaintiff's objections thereto, filed February 3, 1997 (Docket No. 44); and Defendant's reply to the objections, filed February 21, 1997 (Docket No. 45).

In this case, the Court agrees with the Magistrate Judge's recommendation to grant Defendant's Motion to Dismiss Count II of Plaintiff's Amended Complaint and grant Defendant's Motion to Withdraw Motion to Dismiss for Improper Venue or, Alternatively, to Transfer to a More Convenient Forum.[1] After reviewing the Report and Recommendation findings in light of Plaintiff's objections, this Court adopts the Magistrate Judge's Report and Recommendation (R & R).

## I. STATEMENT OF THE CASE

The plaintiff, Dantzler Lumber & Export Co., (hereinafter "Dantzler"), brings a breach of contract claim and a fraud claim against the defendant, Bullington Lumber Co., Inc. (hereinafter "Bullington"). Dantzler, a wholesale distributor of lumber products, alleges that it entered into a sales contract with Bullington, an Alabama corporation that mills and manufactures lumber products. The alleged contract required Bullington to ship lumber of a particular quality to Dantzler in Alabama. However, Bullington allegedly shipped the lumber in "strawberry packs," an industry packing term where conforming lumber is placed on the outside, and non-conforming lumber is hidden in the middle surrounded by the conforming lumber. This packing method hides the non-conforming lumber from view, and only disassembly would reveal the non-conforming material.

Dantzler claims that only twenty-percent of the lumber it received in Alabama was conforming, and eighty-percent was non-conforming scrap lumber. Dantzler alleges that

---

1. The Magistrate Judge correctly implied a motion to withdraw by Defendant upon Defendant's notice that it no longer challenged venue.

it did not discover the "strawberry packing" until after Dantzler had shipped the lumber to its Caribbean customers.

Bullington moved to dismiss the fraud claim (Count II) asserting that the fraud is precluded by the economic loss rule. On January 21, 1997, Magistrate Judge Elizabeth A. Jenkins issued an R & R concluding that the economic loss rule would preclude a fraud cause of action in this present case. (Docket No. 43) On February 3, 1997, Dantzler filed its objections to the Magistrate Judge's R & R. (Docket No. 44).

## II. STANDARD OF REVIEW

■ The District Court shall review *de novo* any portions of the report concerning specific proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1). *See Gropp v. United Airlines, Inc.,* 817 F.Supp. 1558 (M.D.Fla.1993). When no objections are made, the District Judge may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings and recommendations. *See Nettles v. Wainwright,* 677 F.2d 404, 409 (5th Cir.1982). This Court has adopted a clearly erroneous standard of review for findings which are not challenged. *See Gropp,* 817 F.Supp. at 1562.

## III. ANALYSIS

### A. Standard of Review for a Motion to Dismiss

■ The Magistrate Judge correctly reported the appropriate standards for granting a motion to dismiss. Under *Conley v. Gibson,* a district court should not dismiss a complaint "for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts" that would entitle the plaintiff to relief. 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Bracewell v. Nicholson Air Servs.,* 680 F.2d 103, 104 (11th Cir.1982). To survive a motion to dismiss, a plaintiff may not merely "label" his or her claims. *Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla.1996).

■ In deciding a motion to dismiss, a court can examine only the four corners of the complaint. *Rickman v. Precisionaire, Inc.,* 902 F.Supp. 232 (M.D.Fla.1995). The

threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *Ancata v. Prison Health Servs.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted). Also, a court must accept a plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc.,* 910 F.Supp. 576 (M.D.Fla.1995). However, when, on the basis of a dispositive issue of law, no construction of the factual allegations of a complaint will support the cause of action, dismissal of the complaint is appropriate. *Executive 100, Inc. v. Martin County,* 922 F.2d 1536 (11th Cir.1991), *cert. denied,* 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991); *Powell v. United States,* 945 F.2d 374 (11th Cir.1991).

### B. Application of Economic Loss Rule

■ The plaintiff, Dantzler, essentially asks this Court to adopt a new "economic loss rule" test to support its objections to the Report and Recommendation of the Magistrate Judge. The Court will not accept such invitation.

■ Under current Florida law, "contract principles are more appropriate than tort principles to resolve purely economic claims." *Florida Power & Light Co. v. Westinghouse Elec. Corp.,* 510 So.2d 899, 900 (Fla. 1987). Florida courts apply the economic loss rule to prevent tort recovery "when damages flow from a breach of a contract unless the tort is independent of the breach of contract." *Brass v. NCR Corp.,* 826 F.Supp. 1427, 1428 (S.D.Fla.1993). However, the Florida Supreme Court has held that "a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract." *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.2d 1238, 1239 (Fla.1996).

Dantzler argues that a clear test is needed to define the independence between a fraud claim and a breach of contract claim. Dantzler urges the Court to use a two-pronged test from *Public Service Enterprise Group, Inc. v. Philadelphia Electric Co.,* 722 F.Supp. 184 (D.N.J.1989) to define this degree of

independence. The test found in dicta from that case would allow an independent fraud claim "despite the economic loss rule, if (a) the fraud induced the plaintiff to 'enter into additional undertakings' outside the contract, and (b) the plaintiff suffered damages distinct from the breach of contract damages." *Id.* at 201. However, the *Public Service* court did not utilize nor comment on the efficacy of this test.

That court noted that additional undertakings may be prevented by a breaching party's warning about the misrepresentation. *Id.* The failure to warn, however, does not amount to an independent tort. In fact, the court limited the impact of additional undertakings by indicating:

> Even so, is it not usually the case that anytime a defendant misrepresents the status of its contractual performance and therefore postpones the plaintiff's awareness of a breach, that it prevents the plaintiff from taking action to minimize the harm caused by the breach or to end the contractual relationship? Moreover, when this is what the fraud consists in, the damages caused thereby are likely to be, as they are here, identical to those caused by the breach of contract. No distinct harm results.

*Id.* at 210.

In this case, if Dantzler had known about the alleged fraudulent packing methods, it likely would have minimized the harm or ended the contractual relationship. However, even if Dantzler may have avoided shipping the lumber to foreign customers if it had known about the "strawberry packing," this fact does not lead to a finding of an independent tort. The additional shipping expenses and credits given to Dantzler's customers do not demonstrate distinct damages flowing from a separate tort duty. Therefore, even if the "strawberry packing" is classified as a misrepresentation, the *Public Service* test would only lead to a finding of breach of contract.

Dantzler also attempts to support its two-prong test by following a jurisprudential line through the Florida Supreme Court's reasoning in *HTP, Ltd.* The court in *HTP, Ltd.* approvingly cites *Huron Tool and Engineer-*

*ing Co. v. Precision Consulting Services*, 209 Mich.App. 365, 532 N.W.2d 541 (1995). *See* 685 So.2d at 1239–40. In turn, the court in *Huron Tool* cites to the two-prong test Dantzler would like this Court to adopt. However, the court in *Huron Tool* did not use the "additional undertakings" test in its decision. Further, the Florida Supreme Court did not cite to nor quote the appropriate two-prong test language from *Huron Tool* or *Public Service.* Therefore, this Court cannot find that the Florida Supreme Court would follow Dantzler's jurisprudential argument.

On the other hand, the analysis in *Huron Tool* is persuasive in the decision to grant Bullington's motion to dismiss Dantzler's fraud claim. "With regard to the specific intentional tort of fraud, courts generally have distinguished fraud in the inducement as the only kind of fraud claim not barred by the economic loss doctrine." *Huron Tool,* 532 N.W.2d at 544. With other fraud claims, "where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold," the parties are still free to negotiate the terms of the contract. *Id.,* 532 N.W.2d at 545.

The fraud allegations in *Huron Tool* concerned "the quality and characteristics of the software system sold by defendants. These representations are indistinguishable from the terms of the contract and warranty that plaintiff alleges were breached. Plaintiff fails to allege any wrongdoing by defendants independent of defendants' breach of contract and warranty." 532 N.W.2d at 546. Dantzler's allegations are very similar to the allegations in *Huron Tool.* Bullington's sales contract concerned the quality and characteristics of the lumber products. The alleged wrongdoing by Bullington concerned only these characteristics which were defined by the contract. Dantzler's injury resulted only from its reliance on the performance of Bullington.

█ The Magistrate Judge correctly determined that the test to determine the independence of a fraud claim revolves around the performance of the contract. *See HTP, Ltd.,* 685 So.2d at 1240 (citation omitted); *Williams Elec. Co., Inc. v. Honeywell, Inc.,*

772 F.Supp. 1225, 1238 (N.D.Fla.1991). If claims relate to fraud in the performance, the economic loss rule will preclude fraud recovery. *Williams Elec. Co.*, 772 F.Supp. at 1238. Even allegations that the fraud induced the plaintiff to perform additional acts and incur additional expenses will not raise the fraud to an acceptable level of independence. *ThunderWave, Inc. v. Carnival Corp.*, 954 F.Supp. 1562, 1567 (S.D.Fla.1997). In *ThunderWave,* the court held that since the plaintiff did not show fraud in the inducement, the alleged fraud was "interwoven with the breach of contract" and was barred. 954 F.Supp. at 1568.

As the Magistrate Judge noted, Dantzler admitted at oral argument that no fraud in the inducement claim exists against Bullington. Therefore, the alleged "strawberry packing" is non-independent, post-contract fraud and is barred by the economic loss rule. *See Lewis v. Guthartz,* 428 So.2d 222 (Fla.1982).

Dantzler questions the analysis used to determine the degree of independence between tort and contract. Florida courts have analyzed a defendant's fraudulent conduct in relation to the breach of contract and the distinction in damages between the fraud and the contract claim. *See Williams Elec. Co.,* 772 F.Supp. at 1238.

The Florida Supreme Court determined that the intentional acts must be independent from the acts that breached the contract. *See HTP, Ltd.,* 685 So.2d at 1239; *AFM Corp. v. Southern Bell Tel. & Tel. Co.,* 515 So.2d 180, 181 (Fla.1987). A plaintiff's fraud claim is barred by the economic loss rule if the facts surrounding the tort claim are "interwoven" with the facts surrounding the breach of contract claim. *Serina v. Albertson's, Inc.,* 744 F.Supp. 1113, 1117–18 (M.D.Fla.1990). An independent tort "requires proof of facts separate and distinct from the breach of contract." *HTP, Ltd.,* 685 So.2d at 1239.

In this case, Dantzler claims that the same acts led to both the breach of contract and the intentional tort of fraud. Presuming that the allegations are true, the intentional act of "strawberry packing" is the same act that breached the contract. The factual inquiry needed to prove such allegations will be the same. Therefore, the facts surrounding the tort claim are "interwoven" with the facts surrounding the breach of contract claim.

Dantzler further challenges the Magistrate Judge's interpretation of the Eleventh Circuit Court of Appeal's decision in *Hoseline, Inc. v. U.S.A. Diversified Products, Inc.,* 40 F.3d 1198 (11th Cir.1994). In *Hoseline,* the plaintiff, Hoseline, contracted to buy plastic conduit from an Indiana seller. *Id.* at 1199. The seller allegedly shipped 45 percent to 50 percent less product than the seller claimed. *Id.* Acting as a middleman, Hoseline would send the boxes containing the plastic conduit directly to its customers. *Id.*

Hoseline brought suit for breach of contract, fraud, and civil theft. The court held that the economic loss rule barred the fraud and civil theft claims because each claim arose from the breach of the seller's contractual obligation to ship Hoseline a specified amount of plastic conduit. *Id.* at 1199–1200.

Dantzler attempts to distinguish its factual case from *Hoseline.* However, the Magistrate Judge correctly found that both Dantzler and Hoseline were essentially middlemen who relied on a particular seller's representations before shipping the goods in controversy to other customers.

Dantzler claims a different outcome would have occurred under *Hoseline* if the plaintiff had alleged 'additional undertakings' in reliance on a defendant's representations. Dantzler argues that if Hoseline's customers had complained about the under-supply of conduit, the damages would be independent of the breach of contract. Similarly, in this case, Dantzler claims that its customers complained and asked for credits resulting from the shipment of non-conforming lumber. Therefore, Dantzler claims that the inducement to ship the lumber to foreign customers would result in a new round of damages.

This logic is unpersuasive. Dantzler was induced to ship the lumber because of its agreements with its Caribbean customers. The analysis of the independent fraud claim should not focus on the possibility that recognition of the breach of contract would pre-

vent further undertakings. *See Public Service,* 722 F.Supp. at 201. Dantzler attempts to create a new fraud in the inducement cause of action based on a duty to disclose a breach of contract. Florida cases do not appear to go so far.

Further, Dantzler's "new round of damages" analysis centers around third party claims against a middleman. However, the breaches of third-party resale contracts appear to flow from the improper performance of the contract by the original manufacturer. The breach of contract claim and the fraud claim intertwine through the manufacturer's performance. *See HTP, Ltd.,* 685 So.2d 1238. Since the fraud claim is not independent, the damages are not distinct.

A distinction in damages may in fact present another factor Florida courts use to determine the independence of a fraud claim from a breach of contract claim. *See Williams Electric,* 772 F.Supp. at 1238; *see, e.g., Rolls v. Bliss & Nyitray, Inc.,* 408 So.2d 229, 237 (Fla. 3d DCA 1981). The labeling of damages as economic loss is likely not dispositive after *HTP, Ltd.* However, if the economic loss results from inadequate value, repair costs, replacement costs for non-conforming goods, or subsequent loss of profits, Florida courts would likely link this loss with the breach of contract. *See Casa Clara Condominium Assoc. v. Charley Toppino & Sons, Inc.,* 620 So.2d 1244, 1246 (Fla.1993).

In this case, the Magistrate Judge correctly identified Dantzler's damages as " 'disappointed economic expectations' flowing from the alleged breach of contract." R & R, p. 6. The extra shipping costs and other damages resulting from the exportation of the lumber fall within the *Casa Clara Condominium* definition of economic loss. These additional losses did not spring up from an identifiable independent tort.

There is nothing in the Amended Complaint which alleges an "intentional or negligent" act which could be considered independent of the acts which allegedly breached the contract. *See HTP, Ltd.,* 685 So.2d at 1239. Accordingly, it is

**ORDERED** that the Report and Recommendation (Docket No. 43) be **ADOPTED**

and **INCORPORATED** by reference herein, and Defendant's motion to dismiss Count II of the amended complaint (Docket No. 32) and Defendant's motion to withdraw motion to dismiss for improper venue, or alternatively, to transfer to a more convenient forum (Docket No. 40) be **granted.**